HARRY C. McKIBBIN, APPELLANT, V. F. E. BAX & COM-
PANY, APPELLEES.

FILED JULY 12, 1907.   No. 14,926.

Sale of Drugs: NEGLIGENCE.  One who has suffered a direct injury by
the unlawful or criminal act of another may maintain an action
for the recovery of the damages sustained; but the unlawful
sale of a poisonous drug to a minor eighteen years of age, a
quantity of which was by said minor administered to another
minor to his injury, does not create a cause of action in favor
of the father of the latter for loss of his son's services and the
expense of medicines and doctor's bills, as it cannot be said that
the defendants might reasonably have anticipated that such use
would be made of the drug, especially as from the circumstances
of the case the presumption arises that the purchaser knew the
qualities thereof and the effect which giving it to another would
produce.

APPEAL from the district court for Dawson county:
BRUNO O. HOSTETLER, JUDGE.   *Affirmed.*

*H. D. Rhea,* for appellant.

*H. M. Sinclair* and *Warrington* and *Stewart, contra.*

DUFFIE, C.

The defendants are partners conducting a drug store at
Lexington, Nebraska.   On June 24, 1905, a clerk in the
store sold to one Roy Barron, a minor 18 year old, a
bottle of croton oil containing one or two drams.   The
medical witnesses describe croton oil as a drastic pur-
gative.   Barron and a companion put a few drops of the
oil on a pie, some of which they induced Charles McKib-
bin, the minor son of the plaintiff, to eat, causing him
great pain, distress and sickness from which he suffered
for some days.   This action is brought by the plaintiff for
loss of services of his son and for medicine and doctor's
bills.   Article III, ch. 55, Comp. St. 1905, provides for
a board of pharmacy, who are to examine and grant cer-

40

tificates of registration to persons found competent to act as pharmacists. Section 8, art. III, ch. 55, *supra*, provides a penalty for any proprietor of a pharmacy who permits the compounding or dispensing of prescriptions or the vending of drugs, medicines or poisons in his place of business, except by or in the presence of or under the supervision of a registered pharmacist. Section 42 of our criminal code relates to dispensing poisons, and provides for keeping a register of the name, age, sex, place of abode of the purchaser, the quantity sold, and writing the word "poison" upon the package or wrapper. It further makes it unlawful to either sell or give away any article of poison to minors of either sex. Section 44 provides a penalty for the violation of section 42. It is alleged in the petition that the clerk who sold the croton oil to Barron was not a registered pharmacist; that the bottle containing the oil was not labeled poison; and that no registry of the sale was made as required by section 42 of our criminal code; and it is upon these grounds that it is sought to make the defendants liable. The case was tried to the court without the intervention of a jury, and judgment was entered for the defendants upon the ground that the unlawful sale was not the proximate cause of the injury to plaintiff's son.

It is urged with much earnestness that the sale of the poisonous drug to Roy Barron, a minor, in violation of our statute, was the great and moving cause of the injury to the son of the plaintiff, and that defendants are legally responsible for all damages accruing from their unlawful act. In the leading case of *Thomas v. Winchester*, 6 N. Y. 397, it was held that a manufacturing druggist who sold a poisonous drug labeled as harmless was liable in damages to a person who, without carelessness on his part and relying on the erroneous label, took such drug as a medicine, on the ground of breach of public duty, and this whether the injured person was an immediate customer of the defendant or not. In that case it is said: "The defendant was a dealer in poisonous drugs. Gilbert was

his agent in preparing them for market. The death or great bodily harm of some person was the natural and almost inevitable consequence of the sale of belladonna by means of the false label." In that case it was urged by defendants' counsel that the damages were too remote, and it was argued that if a horse be defectively shod by a smith, and a person hiring the horse from the owner is thrown and injured in consequence of the smith's negligence in shoeing, the smith is not liable for the injury; that, although the injury to the rider may have happened in consequence of the negligence of the smith, the latter was not bound, either by his contract or by considerations of public policy or safety, to respond for his breach of duty to any one except the person he contracted with. In reply to this and other similar examples found in defendants' brief, the court said: "In respect to the wrongful and criminal character of the negligence complained of, this case differs widely from those put by the defendant's counsel. No such imminent danger existed in those cases. In the present case the sale of the poisonous article was made to a dealer in drugs, and not to a consumer. The injury therefore was not likely to fall on him, or on his vendee who was also a dealer; but much more likely to be visited on a remote purchaser, as actually happened. The defendant's negligence put human life in imminent danger. Can it be said that there was no duty on the part of the defendant, to avoid the creation of that danger by the exercise of greater caution? or that the exercise of that caution was a duty only to his immediate vendee, whose life was not endangered?   *  *  *  Nothing but mischief like that which actually happened could have been expected from sending the poison falsely labeled into the market; and the defendant is justly responsible for the probable consequences of the act." It will be seen from the above that the case, as numerous other cases of like character cited by the plaintiff, was placed upon the ground that the injury for which suit was brought was the direct, natural and probable consequence of the defend-

ant's negligence. In the case we are considering, if Barron had called for some harmless medicine and, through the neglect of the defendant's clerk, croton oil, or any other poisonous substance, had been given him, and this had been taken under the supposition that it was the article called for, there would be no doubt of the defendants' liability; but the rule is universal that the act complained of must be the proximate cause of the injury. In *Brotherton v. Manhattan Beach I. Co.*, 48 Neb. 563, it is said: "To establish a cause of action based on negligence it is not sufficient for the plaintiff to show that negligence existed, but he must also show that the negligence pleaded and proved was the proximate cause of the injury complained of." In *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S. 469, the supreme court of the United States, in discussing the question of proximate cause, said: "It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. * * * The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." This case was cited with approval by this court in *City of Crete v. Childs*, 11 Neb.

252.    In *Milwaukee & St. P. R. Co. v. Kellogg, supra,* the court further said: "We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance.    They are not when there is a sufficient and independent cause operating between the wrong and the injury.    In such a case the resort of the sufferer must be to the originator of the intermediate cause.    But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it.    The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."    The illegal sale of the croton oil was not the immediate and proximate cause of the injury of which the plaintiff complains.    That injury arose, not from the sale of the oil, but from putting it upon the pie wl  h plaintiff's son was induced to eat by another and independent agency—the act of Barron, the purchaser.    Barron asked for croton oil, and undoubtedly knew the effect which giving it to young McKibbin would produce.    He was a witness for plaintiff on the trial, and, when asked for what purpose he bought the oil, replied: "Just thought we would have a joke on the boys was all."    There was no showing that Barron did not know the dangerous character of the article which he bought, or that he labored under any misapprehension of the effect which giving it to plaintiff's son would have.    It was not given by mistake, or in the supposition that it was harmless, or, at least, no attempt has been made to show that such was the case.    While the defendants may have been guilty of negligence and the violation of our statute in allowing sales to be made by unregistered pharmacists and by a sale of a poisonous medicine to a minor, it cannot be said that injury to the plaintiff's son was reasonably to be expected from such a sale or that his injury was the natural and proximate consequence thereof.

The district court was right in dismissing the plain-

tiff's action, and we recommend an affirmance of the judg-
ment.

By the Court: For the reasons stated in the foregoing
opinion, the judgment of the district court is

AFFIRMED.