CLARENCE E. FOSS, trustee, *vs.* ISIDOR WEXLER.

Suffolk.    May 17, 1922. — June 30, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Department of Public Safety.    Gasoline.    License.    Boston.*

It was not erroneous for the board of street commissioners and the mayor of the city of Boston, in granting in 1920 a license for the keeping, storing and selling of gasoline, for the fire commissioner in approving thereof, and for the State fire marshal and the commissioner of public safety in dismissing appeals therefrom, to assume that power to issue such a license, delegated to the mayor and the board of street commissioners in 1915 by the fire prevention commissioner of the metropolitan district acting under St. 1914, c. 795, § 4, to "continue in force until a revocation thereof shall have been filed with the city clerk of said city of Boston," did not cease when the office of fire prevention commissioner for the metropolitan district was abolished by St. 1919, c. 350, § 99, and that it was continued in force under § 6 of that chapter.

St. 1914, c. 795, § 4, gave the fire commissioner of the metropolitan district power to delegate to the mayor and the board of street commissioners of the city of Boston authority to grant and issue licenses for the keeping, storing and selling of gasoline.

The owner of land, separated from other land whose owner in 1920 was a petitioner for licenses to erect a public garage thereon and to keep, store and sell gasoline therein by a public street forty feet wide, the fee of which was owned by a city, was not the "owner . . . of land abutting on the parcel of land on which the building proposed to be erected for, or maintained as a garage" was to be, or was situated and was not entitled to notice of a hearing upon the petition under St. 1913, c. 577, § 2.

A regulation of the fire prevention commissioner that notice of a hearing upon a petition of the character above described be given to "persons interested within a reasonable radius of the proposed garage" is too uncertain, vague and indefinite to be a valid regulation, and a license issued after a hearing, no notice of which was received by the owner of land in a city separated from that upon which the garage was proposed to be built by a public street forty feet wide, the fee to which was owned by the city, is not invalid.

Licenses to erect, maintain and conduct a public garage in the city of Boston and to keep, store and sell gasoline therein are not made invalid because, after they were granted, the legal title to the land was transferred, where it appears that an assignment of the licenses was expressly recognized by the authorities and was entered on the records of the street commissioners by the chief of the permit division.

A license issued by the street commissioners of the city of Boston cannot be said to be invalid as a matter of law because the signature of the commissioners was made by their duly authorized agent with a rubber stamp.

Objection to the validity of licenses issued for the erection, maintenance and conducting of a public garage in the city of Boston and for the keeping, storing

and selling of gasoline therein, which are based on an alleged failure of the licensees to comply with certain requirements as to fire walls in the construction of the building, need not be considered where it appears that the building commissioner, in approving the permit for the erection of the garage, stated, "This building complies with the requirements of law," that no objection had been made by the public authorities to the building as it was constructed and maintained, and that the State fire marshal granted and afterwards amended a special permit for the erection of the building as it was erected.

BILL IN EQUITY, filed in the Superior Court on February 15, 1921, and afterwards amended, seeking to have declared void a permit and a license, granted by the board of street commissioners of Boston to the defendant's predecessor in title and transferred to him, for the erection and maintenance and conducting of a public garage on property on the opposite side of Columbia Road from that of the plaintiff, and for the keeping, storing and selling therein of one thousand gallons of gasoline in a tank, and to enjoin the defendant from acting under the permit and license.

In the Superior Court the suit was heard by *Sanderson*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. Material evidence and findings of fact by the judge are described in the opinion. By order of the judge, a final decree was entered dismissing the bill, and the plaintiff appealed.

The case was submitted on briefs.

*F. H. Chase & R. P. Delano,* for the plaintiff.

*Lee M. Friedman, P. A. Atherton & J. Sisson,* for the defendant.

DE COURCY, J. The defendant holds title to a parcel of land at the corner of Columbia Road and Quincy Street, Dorchester, on which is a garage; the entrance and exit being on Columbia Road. The plaintiff is the legal owner of two dwelling houses on the opposite side of Quincy Street. He brought this bill in equity to restrain the defendant from using the building as a garage, and from storing gasoline therein. The suit is here on appeal from the decree of the Superior Court dismissing the bill.

The defendant is an employee of one Israel Sisson, the real owner of the garage property. In 1919 Sisson bought the land, and in February, 1920, had it conveyed to Isaac Gluck and Lena Yarchin. On February 2, 1920, Gluck and Yarchin filed a petition with the board of street commissioners of the city of Boston for a permit to erect a public garage and for a license to keep, store and sell one thousand gallons of gasoline at the premises in question.

A hearing was had thereon, after the publication of a notice in a Boston newspaper, and the mailing of a copy to owners of record of abutting land. The fire commissioner making no objection, the street commissioners granted the petition on March 1, 1920; and the mayor approved on March 23. On March 24 the street commissioners issued a certificate that a license was granted to Gluck and Yarchin "to erect, maintain, and conduct a public garage" at 395–399 Columbia Road (which was later approved by the building commissioner), and another certificate of a license for keeping, storing and selling one thousand gallons of gasoline, in a tank underground in said building. This latter license was approved by the fire commissioner.

Appeals were taken from the decision of the street commissioners to the State fire marshal; and after a hearing he confirmed their action on June 3, 1920, and at the same time granted a special license for the same. The objectors appealed from the State fire marshal to the commissioner of public safety; who heard the parties and approved the action of the fire marshal. On June 16, 1920, an appeal was taken to the Superior Court, under St. 1919, c. 350, § 109, to secure an annulment of the order of the commissioner of public safety. The defendant Wexler, who became legal owner of the garage premises on June 4, and transferee of the licenses, was permitted on July 21 to intervene in the proceedings in the Superior Court as a party defendant. A final decree dismissing the bill was entered in that court on February 16, 1921; and an appeal was taken to this court, which was still pending at the time of the hearing of the present suit.

1. The first contention of the plaintiffs is that the board of street commissioners had no authority to issue the licenses. In issuing the license or permit to erect the garage (apart from the use of gasoline in connection therewith) the street commissioners acted under the powers directly and exclusively vested in them by St. 1913, c. 577, as amended by St. 1914, c. 119. The gasoline license was issued by them under a delegated authority from the fire prevention commissioner for the Metropolitan District, acting under St. 1914, c. 795, § 4. That section empowered said commissioner "to delegate the granting and issuing of any licenses or permits authorized by this act . . . to the head of the fire department or to any other designated officer in any city or town

in the metropolitan district." See now G. L. c. 148, § 31. Acting under this statute the fire prevention commissioner on September 10, 1915, delegated to the mayor and board of street commissioners power to issue gasoline licenses such as that in question. It was specifically provided therein: "This delegation of power shall continue in force until a revocation thereof shall have been filed with the city clerk of said city of Boston." The claim of the plaintiffs is that this delegated authority ceased when St. 1919, c. 350, § 99, abolished the office of fire prevention commissioner. But by that statute the powers of the commissioner were transferred to and vested in the department of public safety, and especially in the State fire marshal, an official of that department. Said § 99 provided: "All the rights, powers, duties and obligations of . . . said offices [including that of fire prevention commissioner] are hereby transferred to, and shall hereafter be exercised and performed by the department of public safety . . . which shall be the lawful successor of . . . said boards and offices." A division of fire prevention was created in said department, under the charge of a director to be known as State fire marshal (§ 101); and he succeeded to the duties of the former fire prevention commissioner, — under the supervision of the commissioner of public safety. (§ 104.) By the express terms of § 6, "All orders, rules and regulations made by any officer, board, commission or other governmental organization or agency which is abolished by this act shall remain in full force and effect until revoked or modified in accordance with law by the department which succeeds to the rights, powers, duties and obligations of such governmental organization or agency." It appears that in issuing gasoline licenses in Boston since the 1919 act took effect, all the public officials concerned have acted on the assumption that said power delegated by the fire commissioner to the mayor and board of street commissioners in 1915 is still in force and effective. While this construction of the 1919 statute is not free from doubt, we are not prepared to say that it is erroneous; especially in view of the broad scope and language of that statute, which organized into departments the executive and administrative functions of the Commonwealth. The futher objection to the jurisdiction of the street commissioners, that St. 1914, c. 795, § 4, authorizing the fire prevention commissioner to delegate the granting of licenses to "any other designated

officer" gave him no right to delegate this power to a board of three and the mayor, is not tenable, in view of our statutory rule of construction. G. L. c. 4, § 6, cl. 4. And it is to be noted that prior to the passage of the 1914 act the issuing of such permits was in the hands of the board of street commissioners subject to the approval in writing of the mayor, under the city charter of Boston. St. 1909, c. 486, § 28.

In our opinion the board of street commissioners had jurisdiction to grant the licenses and permits. Hence it is unnecessary to consider whether even if the delegation of authority to them had ended when the fire prevention commissioner was legislated out of office their action was legally ratified and adopted by the decision of the State fire marshal on appeal.

2. The plaintiff also contends that the licenses are invalid because no notice of the hearing before the street commissioners was given to him. Plainly he was not an abutter, because between his premises and those of the defendant is a forty foot street, the fee of which is in the city. Accordingly he did not come within the provisions of St. 1913, c. 577, § 2, requiring the mailing of notice to "every owner of record of each parcel of land abutting on the parcel of land on which the building proposed to be erected for, or maintained as a garage is to be, or is situated." *Wright* v. *Lyons,* 224 Mass. 167. He further objects that the licenses are void because notice was not sent to him under § 24 of the fire prevention commissioner's regulations providing for notice to "other persons interested within a reasonable radius of the proposed garage." A departmental regulation made in addition to the statutory requirement, the non-compliance with which might invalidate a license and affect property rights of great value, should not be framed in terms so vague as not to convey a definite meaning to those whose duty it is to execute it. There is nothing in the language of this regulation to define what is a "reasonable radius" under varying conditions of the locality; such as the character of the neighborhood, whether vacant or built upon; the size of the garage, and other elements involved. In our opinion the trial judge was right in deciding that this "is too uncertain, vague and indefinite to be a valid regulation." See *Cawley* v. *Northern Waste Co.* 239 Mass. 540; *United States* v. *L. Cohen Grocery Co.* 255 U. S. 81.

3. Other objections of minor importance may be disposed of briefly. The assignment of the licenses was expressly recognized by the authorities, and entered on the records of the street commissioners by the chief of the permit division. In the renewal of February 18, 1921, the certificate is made out in the name of Parkway Garage. See *Quinn* v. *Middlesex Electric Light Co.* 140 Mass. 109. In the absence of a statute or regulation to the contrary, we cannot say that the licenses are invalid because the signature of the commissioners was made by their duly authorized agent with a rubber stamp. As to the alleged failure of the defendant to comply with the requirements as to fire walls, etc., in the construction of the building, — without intimating that the question is open to the plaintiffs, — it appears that the special permit granted by the fire marshal on April 26, 1920, and amended January 17, 1921, disposes of their complaints. The building commissioner, in approving the permit for the erection of the garage, stated "This building complies with the requirements of law." And no objection has been made by the public authorities to the building as it now stands.

An examination of the record discloses no error; and the entry must be

*Decree affirmed with costs.*