MADELINE F. GUINAN *vs.* FAMOUS PLAYERS-LASKY
CORPORATION.

Suffolk.   April 1, 2, 1929. — June 4, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Negligence,* Of vendor, In sale of motion picture films, Street railway,
   Violation of regulation of State fire marshal.  *Explosive.  State Fire
   Marshal.  Proximate Cause.  Agency,* Scope of authority or employ-
   ment.  *Evidence,* Presumptions and burden of proof; Competency;
   Relevancy and materiality; Opinion: expert; Of experiments; Of
   agency.  *Witness,* Cross-examination, Credibility.  *Practice, Civil,*
   View; Conduct of trial: closing argument to jury, requests, rulings
   and instructions, charge to jury; Special questions to jury; Excep-
   tions.  *Notice.  Words,* "Safely disposed of."

If a seller of an article recognized as inherently dangerous to life, limb
   or property delivers it to an agent for the purchaser for transportation
   to the purchaser without giving notice to such agent of its dangerous

qualities and the agent has no knowledge of such dangerous properties, the seller may be liable for injuries, which reasonably may be contemplated as likely to result, and which in fact do result, while the article is in transit and by reason of its dangerous qualities, to other persons whose negligence does not contribute to the injury.

At the trial of an action by a passenger on a street car for personal injuries caused by the ignition and explosion on the car of scrap motion picture film being transported on the car in a burlap bag by one to whom it had been delivered by an employee of a corporation, the defendant, there was evidence that the defendant was a producer of motion pictures and a distributor but not a manufacturer of films; that it let the films to exhibitors who, after displaying them, returned them to it; that they then were inspected on its premises and worn and damaged portions were cut out and treated as scrap, being emptied into metal containers; that the film had a nitrocellulose base, was a common product, and was a highly inflammable substance and likely to explode on the application of heat; that the employer of the one who was transporting the film had used such scrap film in his business of a brush manufacturer for three years but that neither he nor his employee knew of its inflammable and explosive character; that he furnished a burlap bag for its transportation; that the defendant's employee knew that the film was carried away in a burlap bag, that the film was a substance concerning which the public authorities had made rules and regulations relative to its handling and that the public officials charged with the responsibility of the public safety made inspections from time to time; that the defendant had various signs in its place of business prohibiting smoking on the premises; and that the defendant's employee did not inform the transporter of the film of its dangerous character. A regulation of the State fire marshal required, as to such film: "The waste parts and scraps shall be removed daily and safely disposed of. In no case shall inflammable film be put in with waste paper, refuse or rubbish." *Held*, that

(1) The jury were warranted in finding, in answer to special questions, that the scrap film, packed as described, as it left the defendant's premises was dangerous to life and property, highly inflammable, and likely to explode;

(2) Whether the defendant's employee, acting as a reasonably careful man, knew or ought to have known that the purchaser or his employee, the transporter, was ignorant of the qualities of scrap film, was not the sole test of the defendant's liability;

(3) It was proper to instruct the jury that the defendant was held to the standard of care which the average reasonably prudent and careful man would exercise, and that it was their province to determine the standard of care required;

(4) Under the regulation of the State fire marshal, there rested on the defendant an additional legal duty beyond the duty imposed at common law to see that the scrap film was "safely disposed of";

(5) In that regulation, the words, "safely disposed of" were not uncertain, vague and indefinite and did not refer merely to a temporary disposition of the film, but were intended to govern its ultimate, careful and safe disposal;

(6) A finding was warranted that the delivery of the scrap film by the defendant's employee to be transported in a burlap bag was a violation of the regulation of the State fire marshal;

(7) A violation of the regulation of the State fire marshal was evidence of negligence of the defendant's employee.

At the trial of the action above described, there was further evidence that the person transporting the bag of scrap film had entered the street railway car and had placed it on the floor, underneath which, with an opening covered by a metal shield in a riser or ten-inch step, was a heater, and that the bag was either against the shield of the heater or close to it; that the temperature outside was twenty-eight degrees Fahrenheit; that, while the car was on its journey, there was a report like an explosion and the bag burst into flames; that thereupon there was a panic among the passengers; and that the plaintiff suffered from burns on his hands, face and body and from other injuries from being trampled upon. *Held*, that a finding was warranted that the negligence of the defendant's employee was a proximate cause of the plaintiff's injuries.

At the trial above described, there was further evidence that the defendant's employee was its head shipper, whose principal duties were to receive film and to ship it out, and that it was a part of his duty to dispose of the scrap film. Evidence by the defendant was to the effect that he had authority to dispose of the scrap film only by delivering it to a transfer company which was paid for carrying it away, but there also was evidence that on previous occasions he had given small pieces of scrap film to boys who would come and ask for it. He testified that when he delivered the film in question he had forgotten about the defendant's orders to dispose of it only to the transfer company, and that the violation of his instructions did not occur to him until after the accident happened. While evidence of the defendant was to the effect that all scrap film was delivered to the transfer company about once a week, its books showed only ten entries of payments to that company during the previous year. *Held*, that, on the complete testimony, a finding was warranted that, in delivering the scrap film in question, the defendant's employee was acting within the scope of his employment.

A jury are not bound to give credit to testimony even though it is uncontradicted.

A jury may believe a part and disbelieve another part of the testimony of a witness; and thus the burden of proof resting on a party may be sustained, although their mere disbelief of all of the testimony of the witness would not have sustained that burden.

Exceptions not argued orally or on a brief before this court will be treated as waived, although counsel state that all exceptions are relied on.

In the circumstances, it was proper for the judge, at the trial above described, to instruct the jury in substance that the words "safely disposed of" in the regulations of the State fire marshal meant that there was a duty imposed on the defendant after the scrap film left the building, and that they might find it had not been safely disposed of if it were given to a third person: it was for the jury to de-

termine whether upon the facts disclosed a final, safe disposal of the film had been made.

The submission of special questions to a jury is within the discretionary power of the trial judge.

Exceptions by the defendant to instructions by the judge at the trial above described which related to use by the jury of definitions given by experts in their testimony as to the character of the scrap film, were overruled, it not appearing that the judge instructed the jury that the definitions as given by the experts were legal definitions, and he having told the jury that they were to be governed by their own recollection of the testimony.

Whether testimony as to experiments shall be admitted must be largely left to the discretion of the trial judge, and that discretion will not be interfered with unless in its exercise he clearly appears to be wrong.

Exceptions, saved by the defendant at the trial above described, to evidence of experiments consisting of subjecting pieces of film to various degrees of heat, to contact with electric sparks and to burning to ascertain its inflammable character, and of firing from a revolver pulverized film, placed in a cartridge, to show its explosive character, were overruled, it being *held*, that the judge was warranted in admitting evidence of the methods and results of the experiments to assist the jury in determining the inflammable and explosive character of the scrap film, and no improper use of the judge's discretion being shown.

A jury may be permitted in the discretion of the trial judge to take a view upon motion of a party.

An exception to the permitting of a view of the defendant's premises at the trial above described was overruled, it not appearing in the record what changes, if any, had been made in the defendant's premises, and there having been evidence that the general location of the shipping room, the corridors, and the number of doors were the same at both times.

With the action above described were tried forty other actions against the same defendant and thirty-four against the employer of the transporter of the bag of scrap film, one of the second group being by the plaintiff in this action. The plaintiff called the employer of the transporter and, subject to exceptions by the defendant in this action, was permitted to cross-examine him. In his closing argument to the jury, the plaintiff's counsel stated that if he had his way the action against the transporter's employer would be discontinued. No exception was taken to such argument, and the judge instructed the jury to disregard it. *Held*, that

(1) The plaintiff, under G. L. c. 233, § 22, had a right to cross-examine a defendant in his action which was being tried with this case;

(2) The scope of the cross-examination was subject to the discretion of the trial judge;

(3) The exception must be overruled.

A jury is presumed to follow instructions given them by the trial judge.

It was competent to attempt to impeach testimony of a witness at a trial by asking him if his testimony at a previous trial had not been essentially different.

An exception to the allowance of a question to a witness seeking a positive answer will be overruled where the witness replied that he did not remember, because the excepting party was not prejudiced by the answer.

At the trial above described, it appeared that the defendant had been indicted as a result of the accident. The defendant's counsel asked the judge to state to the jury that the criminal trial resulted in the acquittal of the defendant. The judge refused this request, but stated to the jury in substance that the defendant was not to be prejudiced by the mention of any criminal proceeding; that "The fact that an indictment or indictments were brought and there was a criminal trial should not prejudice" the defendant. *Held*, that the jury were presumed to have followed the instruction, and therefore the defendant was not shown to have been harmed, and the exception must be overruled.

Although the evidence at the trial above described was as to transportation on a street car wholly in the Commonwealth, it was not improper to permit employees of the defendant to be asked if they knew that the interstate commerce commission had established regulations concerning transportation of film in interstate commerce, such evidence being admissible to prove that the agents and servants of the defendant had knowledge of the inflammable character of the film and the proper marking of shipments.

The conductor of the street car in question was not charged with notice that the ordinary burlap bag described by the evidence contained substances of a highly inflammable and explosive nature; and therefore it was proper at the trial above described to exclude evidence of a rule of the street railway company prohibiting the carrying on the car of "articles of an explosive nature, such as gasoline, alcohol, gunpowder, dynamite, fireworks, or other articles of a similar nature, or articles which are likely to cause accident . . . ."

The number of times that a question may be repeated to a witness within reasonable limits is within the discretion of the judge presiding at the trial and is not the subject of exception.

A witness at the trial above described testified that he had twice been employed by the defendant; that he had seen the employee of the defendant who delivered the scrap film in question give scrap film to boys on different occasions, and that he had done so himself in that employee's presence. *Held*, that, although evidence of previous violations by such employee of the regulations of the State fire marshal as to care of such film was not admissible to prove a violation on the day of the accident, the evidence was admissible to show the extent of such employee's authority with reference to the disposal of the scrap film.

TORT by a passenger on a street railway car for personal injuries received when a quantity of scrap motion picture film, which had been carried into the car by one who had received it from the defendant, ignited and exploded. Writ dated January 16, 1925.

In the Superior Court, the action was tried before *Williams*, J., together with forty other actions against the defendant in this action, thirty-four actions against John F. Bowditch, and nine actions against the Boston Elevated Railway Company.

The stipulation entered into by the parties and referred to in the opinion was as follows:

"All of the above cases are to be assigned for trial by the judge presiding in the Fourth Session of the Superior Court for Suffolk County, and are to be tried together.

"The trial jury is to be permitted to render a verdict or a finding, if upon motion to the trial judge to direct a verdict for any defendant the trial judge refuses so to do, on the question of liability of all the parties defendant in said actions.

"In one set of cases in which Madeline F. Guinan has brought suit against the defendant Boston Elevated Railway Company, the defendant John F. Bowditch, and the defendant Famous Players-Lasky Corporation, the trial jury, if upon motion to the trial judge to direct a verdict for the defendant the trial judge refuses so to do, shall be permitted to assess damages against the party or parties defendant whom it finds liable to the plaintiff in said actions, so as to permit any questions of law arising in the trial of these cases to be taken to the Supreme Judicial Court by any party thereto.

"Any party to any case covered by this stipulation shall have the right to take to the Supreme Judicial Court such questions of law as are seasonably saved during the trial.

"Upon the filing of rescript upon the exceptions, report or appeal of any party to the actions fully tried by the trial jury, all of the parties to this stipulation agree that such rescript shall, except as hereinafter provided, determine the liability of the party or parties found liable therein, and the trial of all the other actions named in this stipulation shall be confined exclusively to the question of damage against the party or parties defendant whose liability has been determined by the rescript of the Supreme Judicial Court and may be heard by different juries as the Superior

Court may order.  If the rescript of the Supreme Judicial Court shall determine that no liability exists against any of the parties defendant named in this stipulation, then judgment for the defendant against whom no liability is found by the Supreme Judicial Court shall be entered by the clerk of this court as to all the other cases named in this stipulation as well as in the cases actually determined by the Supreme Judicial Court.

"If the rescript upon the exceptions or appeal of any party to the actions fully tried by the trial jury overrules the exceptions of one excepting party and sustains the exceptions of any other excepting party and orders a new trial in the case in which a party's exceptions are sustained, then, in that event, judgment shall not be entered against the party whose exceptions are overruled until final determination of the issue of the party whose exceptions are sustained, meaning hereby to delay judgment and execution for and against any one defendant until the rights and liabilities of all parties are finally determined by the Supreme Judicial Court.  It is agreed that any further assessment of damages shall be delayed until the questions of the liability of all the parties hereto shall be finally determined.

"If the case against either the Boston Elevated Railway Company, Famous Players-Lasky Corporation, or John F. Bowditch be taken to the Supreme Judicial Court as herein provided, the excepting party or parties in the cases against the other defendants shall prosecute said exceptions in the Supreme Judicial Court.

"It is the purpose and intent of this stipulation so far as possible that the determination of liability, if any, on the part of each defendant shall be reached in one trial of the facts and the decision of the Supreme Judicial Court upon all questions of law properly raised shall be final and binding upon all the parties hereto.

"In the event that by rescript the Boston Elevated Railway Company is found liable in damage in any suit against it by any plaintiff named in this stipulation, then, and in that event, the Boston Elevated Railway Company, William J. Fahey, and James H. Loughlin, consent to the

entry of judgment for defendants in the cases in which they appear as party plaintiffs; each of these parties having brought suit against the defendant Famous Players-Lasky Corporation and as against the defendant John F. Bowditch."

Material evidence at the trial, instructions to the jury, and exceptions saved by the defendant are stated in the opinion.

The jury found for the defendants Boston Elevated Railway Company and Bowditch; and, in this action, found for the plaintiff in the sum of $15,318, of which, under order of the court, the plaintiff remitted all but $7,500. The defendant alleged exceptions.

*K. C. Parker,* (*J. M. Morrison* with him,) for the defendant.

*G. Alpert* & *F. D. Harrigan,* (*J. P. Feeney* with them,) for the plaintiff.

CROSBY, J.    This is an action brought by a passenger in a street car to recover for personal injuries received on January 3, 1925, as a result of the ignition and alleged explosion of a quantity of scrap motion picture film. It was tried with others against this defendant, and with cases against John F. Bowditch and the Boston Elevated Railway Company. Before the trial all the parties to the various actions entered into a written stipulation which is printed in the record. The jury returned a verdict for the plaintiff in this case; it is before us on the defendant's exceptions to the refusal of the trial judge to direct a verdict in its favor, to certain parts of the judge's charge to the jury, to the failure or refusal to give certain requests for instructions, and to certain rulings upon the admission and exclusion of evidence.

The jury were warranted in finding the following facts: The defendant is a large producer of motion pictures and a distributor of films, but does not manufacture them. It lets the films to exhibitors who, after displaying the pictures, return them. At the time of the accident the defendant employed several girls to inspect the films after their return, in a room provided for the purpose, and, if a film was damaged by wear or use, the girls would cut out the damaged

part with scissors; the remaining ends would then be pieced together.   The film so deleted is known as waste or scrap film; it consists of pieces one and three eighths inches in width and varies in length from less than an inch to three or four feet.   A metal receptacle for the scrap film was provided for each girl, who emptied the receptacle as often as required into large metal barrels kept in fireproof vaults.

One John F. Bowditch, a brush manufacturer, used scrap film in his business to make cement for brushes by a certain "melting down" process which involved the use of acetone. For three years before the day of the accident he had used scrap film obtained from other motion picture concerns. About a week before the accident he telephoned one Doherty, the head shipper of the defendant, told him his name, that he used scrap film in his business, and asked for some.   Doherty said that he had none on hand but if Bowditch would call up later he would give him some.   On the morning of the day of the accident Bowditch telephoned Doherty asking if he had any scrap film on hand, and Doherty replied that he had and would give it to him if he would send over for it. Bowditch then sent his adult son, John C. Bowditch, and one Shirley, an employee, with a note addressed to Doherty saying, "This is the party that you are going to give this waste film to."   Shirley arrived before the younger Bowditch and presented the note to Doherty; he brought with him two burlap bags; he left them on the floor of the corridor which was part of the shipping room, and went out to lunch. While he was out the younger Bowditch arrived and was shown by Doherty to the vaults where the scrap film was kept.

Bowditch testified that he got two burlap bags from his father, and that they had been brought to the defendant's place of business by Shirley; that they were on the floor in the vault; that he started filling them with scrap film and while he was doing so Doherty was standing in the doorway of the vault; that when he had nearly filled the first bag Shirley came in, but Doherty was not there with Shirley at any time while he (Bowditch) was there; that Shirley went out before he did with a bag full of scrap film; that when he had half filled his bag Doherty came back and stayed until

it was nearly filled, about five minutes.  Doherty testified that when Shirley arrived and handed him the note he said that another man was coming with a truck; that upon taking Bowditch to the door of the vault some one called him and he left Bowditch and went into the shipping room, where he found Shirley had returned; that he pointed out the way for Shirley to go to the vaults and told him that he was going to lunch, to wait around a few minutes and he would be back; that on his return both Shirley and Bowditch were gone; that at no time did he see the burlap bags, and that he expected to return before Shirley and Bowditch left.  Shirley testified that on the way out of the building from the vault after his bag had been filled with scrap film he had the bag in his hand, and at that time Doherty spoke to him.  Upon this conflicting testimony it was the exclusive province of the jury to decide what testimony they would believe.  *Bartlett* v. *Medford*, 252 Mass. 311, 313.

One of the bags containing the scrap film was taken by Bowditch to his father's place of business.  Shirley, intending to take the other bag to his employer's place of business, boarded a street car of the Boston Elevated Railway Company.  After the doors of the car were closed he placed the bag against the door on the side he entered.  From the pit of the car to the main floor was a step of about ten inches. Underneath the floor, with an opening covered by a metal shield in this riser or ten-inch step, was a heater.  The bag of scrap film was either against the shield of the heater or close to it.  From the point where Shirley boarded the car up to the time the accident occurred the bag had been moved once, but, except for having been lifted and replaced, its position remained unchanged.  There was no evidence as to the temperature inside the car just before the accident, but the temperature outside at that time was 28° Fahrenheit.  Just before the car reached the Park Street station in the subway the bag burst into flame, causing the injuries to the plaintiff for which this action is brought.

Shirley testified that he heard a grinding and snapping noise; that he looked around and saw a rent or tear about seven inches long near the opening of the bag; that he saw

sparks there and when he attempted to put them out the flames became a solid mass.   Several witnesses who were on the car variously described what occurred as a flash like a "streak of lightning," "a sudden mass of flame went up in the middle of the car and spread over the whole car," "the car was a roaring furnace."   There was evidence of a report, which was described as the sound of a "pistol shot," a "fire-cracker," a "flashlight picture," a "little torpedo," "just like something exploded," and of a "hissing noise like escaping steam."   This was followed by a panic among the passengers who endeavored to escape from the car.   The plaintiff suffered from burns on her hands, face and body, and from other injuries from being trampled upon.

The general rule is that the manufacturer of an article is not liable for negligence in its manufacture to third persons with whom he has no contractual relations.   *Davidson* v. *Nichols*, 11 Allen, 514, 518.   *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341, 343.   *Pitman* v. *Lynn Gas & Electric Co.* 241 Mass. 322, 323.   *Christensen* v. *Bremer*, 263 Mass. 129, 136.   In the absence of negligence a retail dealer in selling a commodity not inherently dangerous is not liable in tort for its defective condition which causes injury to another.   *Barrango* v. *Hinckley Rendering Co.* 230 Mass. 93, 94.

In the sale of an article not inherently dangerous, the seller cannot be charged with negligence unless it be shown that he knew or ought to have known of its unsafe and harmful qualities.   *Kusick* v. *Thorndike & Hix, Inc.* 224 Mass. 413, 414.   It is a well recognized exception to this general rule that where an article is recognized as inherently dangerous to life, limb or property, if the seller delivers such an article to another person, without giving notice to that person of its dangerous qualities, and the person to whom it is delivered has no knowledge of such dangerous properties, the seller may be liable to all other persons for injuries which may be reasonably contemplated as likely to result, and which in fact do result to other persons whose negligence did not contribute to the injury.   *Carter* v. *Towne*, 98 Mass. 567.   *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64, 67.   *Jacobs* v. *New York, New Haven & Hartford Railroad*, 212 Mass. 96,

98. *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593, 597. *Thomas* v. *Winchester*, 6 N. Y. 397. *Huset* v. *J. I. Case Threshing Machine Co.* 120 Fed. Rep. 865, and cases cited.

In answer to three special questions the jury found that the scrap film packed as described as it left the defendant's premises was dangerous to life and property, highly inflammable, and liable to explode. It is settled that whether the defendant was liable in damages to the plaintiff because of the inherently dangerous properties of its article, of which no notice was given, and of which the purchaser had no knowledge, was upon all the evidence presented by the record a question of fact for the jury under appropriate instructions. *Thornhill* v. *Carpenter-Morton Co.*, *supra*, at page 598, and cases cited.

The jury were warranted in finding that there had been a delivery of the scrap film to Shirley by Doherty. They reasonably could infer from the testimony of Bowditch and Shirley that Doherty knew the scrap film was being carried away in burlap bags and consented thereto. Although he denied such knowledge, the jury could decide what testimony they would believe. There was ample evidence that the scrap film was highly inflammable, explosive, and inherently dangerous, and that the defendant's agents had knowledge of its qualities.

Schaefer, the defendant's district manager at the time of the accident, testified that he knew of the character of the film and that it was inflammable. Doherty testified that he knew the film was a substance concerning which the public authorities had made rules and regulations relative to its handling and that the public officials charged with the responsibility of the public safety made inspections from time to time; and that the defendant had various signs in its place of business prohibiting smoking on the premises. There was evidence that the elder Bowditch knew nothing about the dangerous properties of the film, and did not know that it was inflammable, explosive or dangerous, or that there was any danger from using or carrying it. The younger Bowditch testified that at no time did he have any knowlege that he was carrying anything that was highly inflammable, danger-

ous or explosive; that never before that day had he had anything to do with scrap film. Shirley testified that before that time he knew nothing of the properties of scrap film, and did not know that it was highly inflammable, dangerous or explosive or that there was any danger from the use or carrying of it, nor that the application of heat to it would cause trouble. There was evidence that Doherty did not inform either Bowditch or Shirley of the highly inflammable nature of scrap film. There was expert testimony to the effect that motion picture film is a highly inflammable substance and liable to explode on the application of heat.

It is the contention of the defendant that Doherty had no reason to believe that Bowditch was ignorant of the character of the film, but on the contrary he had reasonable grounds to assume that from Bowditch's use of the film for three years before the accident he knew of its inflammable qualities; that having such knowledge he would adequately instruct his servants and therefore no notice was necessary to be given them by Doherty. The defendant contends that the test should be whether Doherty, acting as a reasonably careful man, knew or ought to have known that Bowditch was ignorant of the qualities of scrap film. It was for the jury to determine whether, under all the circumstances, Bowditch had or ought to have had such knowledge. The trial judge correctly instructed the jury that the defendant is held to the standard of care which the average reasonably prudent and careful man would exercise, and that it was the province of the jury to determine the standard of care required. The degree of care must be commensurate with the dangerous character of the article. *Goupiel* v. *Grand Trunk Railway*, 94 Vt. 337, 343. The case of *McKibbin* v. *F. E. Bax & Co.* 79 Neb. 577, relied on by the defendant, is distinguishable from the present case. There was no evidence in that case that the purchaser did not know the dangerous character of the article. *Beickert* v. *G. M. Laboratories, Inc.* 242 N. Y. 168, also is distinguishable at least in two respects: (1) that "There was no evidence that the films were of themselves inherently dangerous" (page 172), while in the case at bar there was expert testimony of their dangerous character; and

(2) that the jury in the present case did not find that motion picture film generally is inherently dangerous, but found that it was so if packed in a burlap bag; while in the New York case it became so only when ignited.   It was a question for the jury upon the evidence under appropriate instructions whether the film was or was not inherently dangerous. *Thornhill* v. *Carpenter-Morton Co., supra.*

It is argued that when an intelligent adult asks for an article by name, he represents to the vendor, by implication at least, that he knows of its properties and uses, and that he is a fit person to whom the sale thereof may be made; that unless there is something connected with the transaction or previously known to the vendor indicating that the vendee cannot be safely entrusted with the article, the sale may be made of the article requested without explaining its properties or the manner in which it safely may be used or handled; and that the vendor's legal duty to such a purchaser extends no further than to give him the identical substance he calls for, and the vendor is not liable for injuries resulting from the improper use or handling of the article, no matter how little knowledge of its properties or methods of safe and proper handling the purchaser may have had in fact.   The cases of *Gibson* v. *Torbert,* 115 Iowa, 163, and *Beldon* v. *Hooper,* 115 Kans. 678, are cited in support of the propositions so argued.

Those cases are inapplicable to the case at bar because, apart from any negligence arising out of the delivery of an inherently dangerous article, without notice, to a person who had no actual knowledge of its dangerous potentialities, there rested on the defendant an additional legal duty to see that the scrap film was safely disposed of.   On the evidence the jury could properly find that there had been a violation of § 23 of the regulations of the fire prevention commissioner relating to motion picture film.   Section 23 reads: "In each room used for repairing or piecing together inflammable motion picture film, there shall be one metal can or metal receptacle for each employee engaged in examining or repairing such film, wherein all waste parts and scraps of such film shall be placed and kept covered.   The waste parts and

scraps shall be removed daily and safely disposed of.   In no case shall inflammable film be put in with waste paper, refuse or rubbish."   By § 1 of the regulations it is provided that "'Inflammable Motion Picture film,' shall mean a film made of nitrocellulose product or other similar substance which is made or used for the purpose of displaying motion pictures . . . ."   By St. 1914, c. 795, § 3, the fire prevention commissioner was granted authority to regulate the keeping, handling, transportation or other disposition of explosive or inflammable compounds.   By St. 1917, c. 307 (now G. L. c. 30, § 37) officials vested with power to make rules and regulations, general in scope and which were to be observed and performed under penalty for violation thereof, were required to file attested copies with the Secretary of State. In compliance with this statutory requirement an attested copy of these motion picture film regulations was so filed. By St. 1919, c. 350, § 99, the office of fire prevention commissioner was abolished and "All the rights, powers, duties and obligations" of his office were transferred to be thereafter exercised and performed by the department of public safety; by § 101 of this chapter (now G. L. c. 22, § 3) the duties of the fire prevention commissioner were transferred to the State fire marshal; by § 6 it was provided that "All orders, rules and regulations made by any officer, board, commission or other governmental organization or agency which is abolished by this act shall remain in full force and effect until revoked or modified in accordance with law by the department which succeeds to the rights, powers, duties and obligations of such governmental organization or agency."   No new regulations relating exclusively to motion pictures have been promulgated by the State fire marshal and there is no legislation or regulation which revokes or modifies the regulations of the fire prevention commissioner.   It follows that this regulation was in force on January 3, 1925.   *Foss* v. *Wexler*, 242 Mass. 277, 280.

The defendant contends that the words "safely disposed of" in § 23 are "uncertain, vague, and indefinite in their meaning, and hence that part of the regulation is invalid." This contention cannot be sustained.   It is manifest that the

language is sufficiently certain and definite. The cases cited by the defendant are distinguishable. *Winthrop* v. *New England Chocolate Co.* 180 Mass. 464. *Commonwealth* v. *Maletsky,* 203 Mass. 241. *Kilgour* v. *Gratto,* 224 Mass. 78. *Cawley* v. *Northern Waste Co.* 239 Mass. 540. *Foss* v. *Wexler,* 242 Mass. 277. The defendant further contends that if the regulation is valid it applies to the removal of scrap film from the repair room only and has no reference to its removal from the building; that the words "safely disposed of" have reference to the deposit of the scrap film in a safe place in the building, and that when the contents of the cans or receptacles were emptied into a metal barrel in the vault this regulation was complied with. Such a restricted interpretation of the regulation would defeat the purpose of its adoption. Its obvious purpose is to provide for the ultimate, safe disposition of a highly inflammable substance, that a potential fire hazard may be eliminated. To construe the regulation as pertaining merely to a temporary disposition would largely nullify its efficacy. It was intended to govern not only a temporary storage but also the ultimate, careful and safe disposal.

It was agreed at the trial that motion picture film with a nitrocellulose base is a common product, and that there is no difference in films manufactured by different concerns. Manifestly the film in the case at bar comes within § 1 of the regulation. There was evidence from which the jury could properly find that the delivery of the scrap film by Doherty to Shirley in a burlap bag was not a safe disposal of it. The regulations have the force and effect of law. A violation of a statute, ordinance or regulation, although not conclusive, is evidence of negligence on the part of a violator as to all consequences that the statute, ordinance or regulation was intended to prevent. *Wright* v. *Malden & Melrose Railroad,* 4 Allen, 283, 290. *Lane* v. *Atlantic Works,* 111 Mass. 136, 140. *Hanlon* v. *South Boston Horse Railroad,* 129 Mass. 310, 311. *Newcomb* v. *Boston Protective Department,* 146 Mass. 596, 600. *Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221, 233. *Gordon* v. *Bedard,* 265 Mass. 408, 411.

The defendant contends that, even if there was evidence

from which the jury would be warranted in finding negligence on the part of the defendant, such negligence was not the proximate cause of the plaintiff's injuries. An obligation rests upon one who delivers an article, which he knows, or ought to know, to be peculiarly dangerous, to give notice of its character or bear the natural consequences of his failure to do so. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 444. The injury must be the direct result of the wrongful act. By direct and proximate cause is not meant that the cause or agency which is nearest in time or place to the result is necessarily to be chosen. *Lynn Gas & Electric Co.* v. *Meriden Fire Ins. Co.* 158 Mass. 570, 575. It will not be considered too remote if, according to human experience, the defendant ought to have foreseen that the intervening act was likely to happen. *Lane* v. *Atlantic Works, supra. Horan* v. *Watertown,* 217 Mass. 185, 186. *Gordon* v. *Bedard, supra. Teasdale* v. *Beacon Oil Co.* 266 Mass. 25, 27. It was said in *Lane* v. *Atlantic Works, supra,* at pages 139, 140, that "The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury." *Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352, 362. It is sufficient if it appears that the negligent act of the defendant would probably cause harm to another, even though the precise manner in which it occurred could not have been foreseen. *Hill* v. *Winsor,* 118 Mass. 251, 259. *Dulligan* v. *Barber Asphalt Paving Co.* 201 Mass. 227, 231. *Teasdale* v. *Beacon Oil Co., supra.*

The jury were warranted in finding that, if Doherty delivered the scrap film to Shirley and allowed him to take away this highly inflammable substance in a burlap bag, injurious consequences might reasonably be expected to follow; and that such negligent conduct on the part of Doherty was the proximate cause of the plaintiff's injuries. There is no intervening cause that would break the chain of causation. All that appears is that the act of a third person intervened and contributed a condition necessary to the

injurious effect of the original negligence, which brings the cause within the rule stated in *Lane* v. *Atlantic Works, supra,* and cases previously cited. There was evidence that when the film was subjected to heat it emitted gas that could ignite and, if confined, might explode. Upon this testimony a finding was warranted that the defendant should have foreseen that some such intervening act was likely to happen while the film was being transported in an unsuitable and improper container.

It is the contention of the defendant that its motion for a directed verdict should have been granted upon the ground that the acts of Doherty were not within the scope of his employment. It is conceded by the defendant that Doherty was its head shipper, having been appointed by the district manager who was in authority, that Doherty's duties were to receive film and to ship it out, and that it was a part of his duty to dispose of the scrap film. The defendant was liable for Doherty's acts within the real or apparent scope of his authority. *Brooks* v. *Shaw*, 197 Mass. 376, 380. *O'Leary* v. *Fash*, 245 Mass. 123, 124. *C. F. Hovey Co., petitioner*, 254 Mass. 551, 555.

Doherty and Schaefer testified that Doherty had authority to dispose of the scrap film only by delivering it to the Film Transfer Company which was paid for carrying it away. There was evidence that on previous occasions Doherty had given small pieces of scrap film to boys who would come and ask for it. Doherty further testified that when he gave the scrap film to the men in Bowditch's employ he had forgotten about the defendant's orders to dispose of it only to the Film Transfer Company, and that the violation of his instructions did not occur to him until after the accident happened. The plaintiff was not able directly to contradict this testimony. The jury might well scrutinize the testimony of Schaefer and Doherty which tended to shield the defendant. *Conant* v. *Constantin*, 247 Mass. 76, 79. *McDonough* v. *Vozzela*, 247 Mass. 552, 558. The jury were not bound to give credit to this testimony even though uncontradicted. *Lindenbaum* v. *New York, New Haven & Hartford Railroad*, 197 Mass. 314, 323. Although mere disbelief of testimony is not proof of

facts of an opposite nature or tendency, *Wakefield* v. *American Surety Co. of New York*, 209 Mass. 173, 177.   *Laidlaw* v. *Vose*, 265 Mass. 500, 505, the jury might have believed that part of Doherty's testimony that related to his authority to dispose of the scrap film, and disbelieved the alleged limitation of his authority to dispose of it only to the Film Transfer Company.   *Klayman* v. *Silberstein*, 252 Mass. 275, 278. The jury saw the witnesses and heard them testify.

The jury could have inferred from the facts that on previous occasions Doherty had disposed of some scrap film to boys, and that the defendant's books showed only ten entries of payments to the Film Transfer Company during the previous year, although by the defendant's own testimony all scrap film was delivered to the latter company about once a week, that scrap film had been disposed of to other persons than the Film Transfer Company, and that Doherty's authority was not so limited.   *Breen* v. *Dedham Water Co.* 241 Mass. 217, 218.   The mere fact that Doherty may have acted in disobedience of the defendant's order would not absolve the defendant from liability.   The disposition of the scrap film was within the general scope of his employment. It is therefore immaterial that he acted contrary to his instructions.   His act in delivering the scrap film to Shirley is deemed to be the act of the defendant.   *Powell* v. *Deveney*, 3 Cush. 300, 305.   *Southwick* v. *Estes*, 7 Cush. 385.   *Wilton* v. *Middlesex Railroad*, 107 Mass. 108, 110.   *George* v. *Gobey*, 128 Mass. 289, 290.   *Cain* v. *Hugh Nawn Contracting Co.* 202 Mass. 237, 240.

At the close of the evidence, the defendant filed one hundred and thirty-seven requests for rulings and instructions.   Those not argued may be treated as waived, notwithstanding a statement of counsel that all exceptions are relied on.   *Fay* v. *Hunt*, 190 Mass. 378, 381.   *Commonwealth* v. *Dyer*, 243 Mass. 472, 508.   *Silverman* v. *Rothfarb*, 247 Mass. 456, 458. *Commonwealth* v. *Booth*, 266 Mass. 80, 82.   *Smith* v. *Boston Elevated Railway*, 266 Mass. 424, 433.   We have examined all the requests for rulings argued.   Many of them were contrary to the legal principles applicable to the case as herein previously stated, and were therefore properly refused, as

were those based upon particular portions of the evidence. The judge was not required to give such instructions. *Shattuck* v. *Eldredge,* 173 Mass. 165, 168. *Marsh* v. *Beraldi,* 260 Mass. 225, 231. *Smith* v. *Boston Elevated Railway, supra.*

The requests respecting the authority of Doherty as the defendant's agent were adequately dealt with in the instructions given. The judge told the jury that the burden was on the plaintiff to prove by a preponderance of the evidence that the defendant was negligent. It was not contended that the plaintiff was not in the exercise of due care. Many requests not given in the language presented were properly covered by the charge. *Norwood* v. *Somerville,* 159 Mass. 105, 112. *Dunham* v. *Holmes,* 225 Mass. 68, 70, and cases cited. It would serve no useful purpose to refer in detail to all of the requests for rulings. It is sufficient to say that they were covered by the instructions so far as they could properly have been given.

Three exceptions were taken by the defendant to portions of the judge's charge. He instructed the jury in substance that the words "safely disposed of" in the regulations meant that there was a duty imposed on the defendant after the scrap film left the building, and that they might find it had not been safely disposed of if it were given to a third person. We are of opinion that this instruction was correct. It was for the jury to determine whether upon the facts disclosed a final, safe disposal of the film had been made. This exception must be overruled. The exception to the submission of the special questions to the jury cannot be sustained. Such submission was within the discretion of the judge. *Mercier* v. *Union Street Railway,* 234 Mass. 85, 87. *Hanneman* v. *I. Shlivek & Sons, Inc.* 235 Mass. 317, 320.

An exception was taken to the instruction that the jury could decide whether or not the substance was likely to explode, and could use in that connection the definitions given by the experts in their testimony. The defendant argues that the judge seemed to treat the definitions as evidence in the case, and allowed the jury to accept them as legal definitions. We do not so understand the instructions. One of the important facts to be determined by the jury was

whether the scrap film was liable to explode. Expert witnesses, who were qualified as possessing peculiar skill and knowledge in chemical science not common to men in general, testified as to their opinions. It is plain that such testimony was admissible. *New England Glass Co.* v. *Lovell,* 7 Cush. 319. Under the permission of the court it was not improper for them in expressing their opinions to preface their testimony with a scientific definition of the subject concerning which they were testifying, to enable the jury to understand it clearly. This was as much a part of the evidence in the case as any other testimony. There is nothing to show that the judge instructed the jury that the definitions as given by the experts were legal definitions. In referring to the definitions of an explosion given by the witnesses, he merely stated his memory of the evidence, which he had a right to do. *Haskell* v. *Cape Ann Anchor Works,* 178 Mass. 485, 488. *Kelley* v. *Boston,* 201 Mass. 86, 89. Moreover, he correctly told the jury that they were to be governed by their own recollection of the testimony. This exception must be overruled.

A large number of exceptions was taken to the admission of evidence. Only those argued by the defendant will be considered, all others are deemed to have been waived. *Fay* v. *Hunt, supra. Commonwealth* v. *Dyer, supra. Silverman* v. *Rothfarb, supra.* The defendant excepted to rulings admitting evidence of certain experiments made and testified to by three expert witnesses. Whether testimony as to experiments shall be admitted must be largely left to the discretion of the trial judge, and that discretion will not be interfered with unless in its exercise he clearly appears to be wrong. *Commonwealth* v. *Tucker,* 189 Mass. 457, 478. *Dow* v. *Bulfinch,* 192 Mass. 281, 285. *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593, 599. Testimony as to experiments made at times other than the time of the main occurrence at issue has frequently been received, and not infrequently rejected in the discretion of the trial judge. *Baker* v. *Harrington,* 196 Mass. 339, and cases cited. Although it must appear that the conditions or circumstances were in general the same in the illustrative case and the case in hand, *Commonwealth* v. *Piper,* 120

Mass. 185, *Biancucci* v. *Nigro*, 247 Mass. 40, 43, the determination whether the conditions were sufficiently similar to make the experiments of any value in aiding the jury is a matter resting in the sound discretion of the judge. *Field* v. *Gowdy*, 199 Mass. 568, 574. It was said in *Commonwealth* v. *Tucker*, *supra*, that "The true ground of admitting the details and result of such an experiment is that it may be of assistance, but the question whether it may be or whether it may or may not lead to too many collateral questions is largely within the discretion of the court." *Bemis* v. *Temple*, 162 Mass. 342, 344. The experiments in the case at bar consisted of subjecting pieces of film to various degrees of heat, to contact with electric sparks and to burning to ascertain its inflammable character. Small pieces of film were pulverized, inserted in a cartridge and fired from a revolver to determine the explosive qualities of the film. Obviously an exact duplication of an explosion in a street car would not be practicable. We are of opinion that the judge was warranted in admitting evidence of the methods and results of the experiments to assist the jury in determining the inflammable and explosive character of the scrap film, a question of much importance in the case at bar, *Commonwealth* v. *Best*, 180 Mass. 492, 495, and that it cannot be said that the conclusion of the judge that the experiments would be of aid to the jury was clearly wrong. *Commonwealth* v. *Buxton*, 205 Mass. 49, 53.

The exception to the taking of a view by the jury cannot be sustained. A jury may be permitted in the discretion of the judge to take a view upon motion of a party. G. L. c. 234, § 35. *Commonwealth* v. *Chance*, 174 Mass. 245, 247. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 29. *Sargeant* v. *Traverse Building Trust*, *ante*, 490. The defendant contends that the premises were not in the same condition at the time of the view and the time of the accident. There is nothing in the record as to what changes, if any, had been made, and as there was evidence that the general location of the shipping room, the corridors, and the number of doors were the same at both times, it cannot be said that there was an abuse of discretion on the part of the judge in permitting the view.

The plaintiff called as a witness one Bowditch, a defendant in one of the cases tried with this case, and was allowed to cross-examine him. The defendant excepted to this cross-examination on the ground that the purpose of such examination was to relieve Bowditch from liability to the plaintiff. "A party who calls the adverse party as a witness shall be allowed to cross-examine him." G. L. c. 233, § 22. *Emerson* v. *Wark,* 185 Mass. 427, 428. *Walsh* v. *Feinstein,* 251 Mass. 109, 112. The scope of cross-examination is largely within the discretion of the trial judge. *Jennings* v. *Rooney,* 183 Mass. 577, 579. *Phillips* v. *Vorenberg,* 259 Mass. 46, 73. It is the contention of the defendant that the extent of this examination, coupled with the closing argument of the plaintiff's counsel that if he had his way the action against Bowditch would be discontinued, constituted an abuse of discretion. The jury were instructed to disregard this statement. Whatever impropriety there may have been was eliminated by the instruction. *Commonwealth* v. *Poisson,* 157 Mass. 510, 513. *O'Neill* v. *Ross,* 250 Mass. 92, 96. It must be assumed that the jury acted in accordance with the instruction. *Commonwealth* v. *Richmond,* 207 Mass. 240, 251. *Commonwealth* v. *Cooper,* 264 Mass. 368, 374. Moreover, although the argument of the plaintiff's counsel was brought to the attention of the judge, it does not appear that any exception was taken to it. *Commonwealth* v. *Cabot,* 241 Mass. 131, 151.

The witness Schaefer testified that one Erbb was not branch manager of the defendant at the time of the accident. Subject to the defendant's exception, he was asked if at a previous trial he had testified that Erbb was manager at that time. This was competent for the purpose of impeaching his credibility by showing he had made inconsistent statements. G. L. c. 233, § 23. *Commonwealth* v. *Festo,* 251 Mass. 275. *Commonwealth* v. *McIntosh,* 259 Mass. 388, 390. In any event, the defendant was not prejudiced as the witness answered that he did not remember.

It appeared during the trial that the defendant had been indicted as a result of the accident. The defendant's counsel asked the judge to state to the jury that the criminal trial

resulted in the acquittal of the defendant. The judge refused this request, but stated to the jury in substance that the defendant was not to be prejudiced by the mention of any criminal proceeding; that "The fact that an indictment or indictments were brought and there was a criminal trial should not prejudice" the defendant. The defendant was not harmed as the jury are presumed to have followed the instructions. *Commonwealth* v. *Richmond, supra.*

Doherty and Schaefer were asked by counsel for the railway company, subject to the defendant's exception, if they knew that the interstate commerce commission had established regulations concerning transportation of film in interstate commerce. This evidence was admissible to prove that the agents and servants of the defendant had knowledge of the inflammable character of the film and the proper marking of shipments. Knowledge on the part of the defendant's servants and agents of the inherently dangerous qualities of the film was an essential element to be proved, and, as this evidence tended to show knowledge on the part of the defendant, the exception must be overruled.

The judge excluded rule 58A of the Boston Elevated Railway Company which reads as follows: "Carrying packages, very long or bulky articles, articles of an explosive nature, such as gasoline, alcohol, gunpowder, dynamite, fireworks, or other articles of a similar nature, or articles which are likely to cause accident, soil clothing or seriously inconvenience passengers, are not to be carried on the cars at any time." The defendant contends that if this rule had been admitted the jury might have found that, in compliance with it, the conductor should have prevented Shirley from bringing the bag into the car; that his failure to do so was an act of negligence which intervened between the defendant's conduct and the injuries received by the plaintiff and others, and was of a character not reasonably to have been foreseen by the defendant. The rule was rightly excluded. It was said by Braley, J., in *Jackson* v. *Boston Elevated Railway*, 217 Mass. 515, at page 516, that "The carrying of travelling bags or bundles by passengers is an ordinary incident of travel, and unless the carrier can be charged with reasonable notice that

such articles are so placed as to become obstacles to the safe entrance or exit of passengers, no neglect of duty is shown." *Pitcher* v. *Old Colony Street Railway*, 196 Mass. 69.   *Lyons* v. *Boston Elevated Railway*, 204 Mass. 227, and cases cited.   The conductor was not charged with notice that an ordinary burlap bag contained substances of a highly inflammable and explosive nature.

The witness Doherty testified that he disposed of the scrap film weekly to the Film Transfer Company.   Counsel for the railway company cross-examined him and asked him what he would do if the transfer company did not call to carry away the film; he replied that he did not know since it never had happened.   This evidence was admissible to show the extent of Doherty's duties with reference to the disposal of the scrap film.   He was further questioned along that line. The defendant contends that, after the witness had answered that he did not know what he would do, further questions on that subject should not have been admitted.   It is settled that how many times a question may be repeated to a witness within reasonable limits is within the discretion of the presiding judge and is not the subject of exception.   *Demerritt* v. *Randall*, 116 Mass. 331, 332.   *Smith* v. *Boston Elevated Railway*, 208 Mass. 186, 187.   *Commonwealth* v. *Bosworth*, 257 Mass. 212, 214.

The witness Bruff testified that he had twice been employed by the defendant; that he had seen Doherty give scrap film to boys on different occasions, and that he had done so himself in Doherty's presence.   Although evidence of previous violations of the moving picture regulations by Doherty was not admissible to prove a violation on the day of the accident, the evidence was admissible to show the extent of Doherty's authority with reference to the disposal of the scrap film.   The exceptions to this testimony cannot be sustained.

An examination of all the exceptions that have been argued in this voluminous and somewhat complicated record fails to disclose any error of law in the conduct of the trial.

*Exceptions overruled.*