FRED A. FOLLANSBEE *vs.* GEORGE A. OHSE.

Middlesex.     November 12, 1935. — December 30, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Negligence*, Violation of regulation of department of labor and industries.     *Proximate Cause.*

Failure by a painter, painting a house under contract with the owner, to use an independent "tie line" to secure a staging suspended from the gutter, as required by a regulation adopted by the department of labor and industries under G. L. (Ter. Ed.) c. 149, §§ 6, 7, which failure, under §§ 13, 180, was a violation of a criminal law and contributed to injury sustained by the painter when the gutter gave way and the staging fell, barred recovery by him against the owner for alleged negligence of the latter respecting the condition of the gutter; and the fact that the painter knew of nothing on the roof to which a "tie line" could be fastened was immaterial.

TORT.     Writ dated December 18, 1930.

The action was tried in the Superior Court before *Macleod*, J. A verdict for the plaintiff in the sum of $6,500 was recorded subject to leave reserved. The judge ordered entered a verdict for the defendant and reported the action.

*R. J. Hartford*, for the plaintiff.

*G. E. Roewer*, for the defendant.

CROSBY, J.   This is an action of tort in which the plaintiff seeks to recover for personal injuries sustained by him while using a staging in painting the defendant's house, and alleged to have been caused by negligence of the defendant.

The plaintiff testified as follows:   He had been a painter for nearly fifty years.   He made an agreement with the defendant to paint his house for $130.   It was a two and a half story wooden house with a pitched roof; the gutters were about twenty-six or twenty-eight feet above the ground and in bad condition.   The plaintiff inspected the gutters: he first looked at the left side of the house and could see from the ground that the gutter at the roof was leaking and unsafe for him to use in swinging his staging from.   On the same day he notified the defendant that the gutters of the house needed repairing and that he could not go on with the work until they had been fixed; the defendant replied that he would employ a carpenter and have the gutters repaired. The plaintiff and his workman, one Cummings, commenced painting the front of the house on which there were no · gutters; after finishing that part they painted the back of the house.   While the plaintiff was working there on a piazza, the defendant called up to him and said, "The gutters are all right now, go ahead."   Before this time he had seen the defendant's carpenter working on the premises; after this conversation, he painted the left side of the house, using the gutter, which was new, to place his hooks in from which to swing the staging.   After finishing the left side, he and his employee worked on the right side, first testing the gutter and finding it apparently safe.   There was a bay window on the right side about two thirds back from the front of the house; the distance from the bay window to the back of the house was about fifteen or eighteen feet.   When the plaintiff and his employee came to paint the portion of the right side in the rear of the bay window, they took the staging and an extension ladder there.   A gutter hook is made of iron or steel, and there is a block attached to the lower end into which the falls go; at the tip of the hook there is a cross piece, about eight or ten inches in length, which rests in the gutter when the hook is in use.   Cummings went up the

extension ladder carrying a gutter hook, which he inserted into the gutter; then the plaintiff put a board between the ends of the falls and jumped up and down on it for the purpose of testing the gutter to determine whether it was strong enough to support the staging. Cummings remained on the ladder near where the hook had been placed to observe the gutter when the board was jumped upon, and reported that the gutter seemed all right. He put another hook in the gutter and made the same test, and told the plaintiff that the gutter appeared to be all right. Cummings was an experienced painter. The plaintiff and Cummings went upon the staging and commenced painting. Cummings took a step or two for the purpose of speaking to him and then, without warning, the right hand side of the staging fell down and the plaintiff fell to the ground and was seriously injured. The plaintiff did not use a tie line on this job; he testified that there was nothing on the roof that he knew of to which a tie line could be secured. He did not say that everything was all right before the carpenter left the job; he did not see the gutter on the right side of the building until he went to that side for the purpose of painting it; so far as he could tell from looking at it from the ground, it was all right; he relied on what the defendant told him about the gutters being all right, and on the test he and Cummings made by jumping on the falls and inspecting the gutter.

The plaintiff's employee Cummings testified that while he and the plaintiff were working on the rear of the house he saw the defendant come to a point below the piazza where they were working and heard the defendant say to the plaintiff: "The gutters are all right now, go ahead"; that after finishing the rear of the house he and the plaintiff painted the left hand side of it, swinging the staging on hooks inserted in the gutter; that the gutter was new; that after painting that side of the house they commenced the right side; that he put the hooks in the gutter and watched it while the plaintiff jumped on the falls; that the gutter seemed all right; that after he had been working on that side about half an hour the gutter above the plaintiff gave way and the right end of the staging fell to the ground taking the

plaintiff with it; that the piece of the gutter which fell was six or eight feet long; that the wood in the trough was cracked and blackened; that the wood inside was rotten; that the nails had broken off and had not pulled out; that the nails were badly rusted and the nail holes were enlarged; that he thought it was right for them to swing the staging from the gutter. There was other evidence presented by the plaintiff tending to show that the gutter on the right hand side of the house was in a decayed condition; that the piece that fell to the ground was painted and looked all right when in place, but that the inside of it was very rotten.

It could have been found by the jury from the testimony of the plaintiff that when he went to the defendant's house for the purpose of painting it he inspected the gutters, and found they were in bad condition, and that on the same day he notified the defendant that he could not go on with the work until they were repaired; that the defendant replied that he would employ a carpenter, and have the gutters repaired. Thereafter the defendant employed a carpenter who repaired one of the gutters, but did not make any repairs upon the gutter on the right side of the house. Later, and while the plaintiff was painting at the back of the house, the defendant said to him, "The gutters are all right now, go ahead." Before this time the plaintiff had seen the defendant's carpenter working on the premises. After the plaintiff and his employee had finished painting the left side of the house, they tested the gutter on the right side, and finding it apparently safe they suspended the staging from it. Soon after the plaintiff and his assistant began painting on this side the staging fell, owing to the decayed condition of the gutter, and the plaintiff was seriously injured.

The plaintiff was the contractor; he used a "swinging staging." It belonged to him, and was put up by him, and the defendant had nothing to do with it and no responsibility for it. With respect to a "swinging staging" there are printed regulations adopted and in force under G. L. (Ter. Ed.) c. 149, §§ 6, 7. The important provision is in these words: "Supporting devices shall be secured to some stable

part of the building or structure. When they are attached
to or supported by the gutters, they shall be secured inde-
pendently by a tie-line." That is imperative and unequivo-
cal. It makes no exceptions. It is plainly authorized by the
statute. It is provided by § 13 of said c. 149 that "No person
shall violate any reasonable rule, regulation, order or require-
ment made by the department under section six . . . ." It
is provided by § 180 of the same chapter that "Whoever
violates a provision of this chapter for which no specific
penalty is provided shall be punished by a fine of not more
than one hundred dollars." It seems plain on the evidence
that the plaintiff was violating this regulation and thus com-
mitting a crime.

The general rule is that "A violation of a statute, ordi-
nance or regulation, although not conclusive, is evidence of
negligence on the part of a violator as to all consequences
that the statute, ordinance or regulation was intended to
prevent." *Guinan* v. *Famous Players-Lasky Corp.* 267
Mass. 501, 516. *Milbury* v. *Turner Centre System*, 274 Mass.
358, 361. *Dzura* v. *Phillips*, 275 Mass. 283, 290.

It was said in *Jones* v. *New York, New Haven & Hartford
Railroad*, 275 Mass. 139, at page 143: "In an ordinary
action of tort at common law to recover compensation for
personal injuries, violation of a penal statute by the plain-
tiff at the moment of injury is a factor to be regarded. Its
relation to the rights of the plaintiff was exhaustively con-
sidered, with a full review of pertinent authorities, in *Bourne*
v. *Whitman*, 209 Mass. 155, by the court speaking through
Chief Justice Knowlton, at page 167: 'It has been estab-
lished from early times that one who is violating a criminal
law cannot recover for an injury to which his criminality
was a directly contributing cause.' The rule there stated
with amplifications is in substance that a plaintiff engaged
in a criminal act at the time of sustaining injury through the
negligence of another is not thereby necessarily precluded
from recovery. He is precluded from recovery provided the
element of criminality involved in that act and intended to
be punished by the law has direct contributory effect in bring-
ing on his injury. He may recover (if the other essentials of

liability are established) provided the element of criminality involved in that act and intended to be punished by the law did not have a direct contributory effect in bringing on his injury. The law on its civil side will not aid a violator of the criminal law in seeking relief from the consequences of his own transgression."

It is plain that the plaintiff did not use a tie line, although he was required to use one by the regulation. His testimony on the point was this: "that he never at any time in his painting business used a tie line when swinging on staging secured by gutter hooks inserted in gutters; that he did not know there was any law or regulation in force at that time which required him to use a tie line; that he had never registered at the State House as a boss painter and did not then know anything about registration; that he did not use a tie line on this job; that there was nothing on the roof which he knew of to which a tie line could be secured." This conduct was a violation of the regulation. The fact that the plaintiff testified that there was "nothing on the roof which he knew of to which a tie line could be secured" is immaterial. It could have been secured in some other way than to something "on the roof." The regulation does not require that it be secured to something on the roof. The tie line could have been thrown over the roof and secured to something on the other side. In any event, the regulation is imperative. The failure of the plaintiff to use a tie line was a cause directly contributing to his injury. The staging belonged to the plaintiff. He was the contractor. It was his duty to see that the staging was "secured independently by a tie-line." Therefore, his violation of a criminal law directly contributed to his injury, and under *Bourne* v. *Whitman*, 209 Mass. 155, and the numerous cases following it, he is precluded from recovery. *Patrican* v. *Garvey*, 287 Mass. 62. *Klegerman* v. *New York, New Haven & Hartford Railroad*, 290 Mass. 268, 275. The testimony of the inspector, to the effect that many painters used tie lines and some did not use them, is of no avail to the plaintiff. He is bound by the regulation in any event, especially when he seeks to make the defendant responsible for personal injuries result-

ing from such violation of law. The trial judge properly allowed the defendant's motion that a verdict be entered in his favor.

In accordance with the terms of the report, judgment is to be entered for the defendant.

*So ordered.*