GREENWAY WOOD HEEL CO. INC. *vs.* JOHN SHEA
COMPANY.

Essex. November 2, 1942. — February 4, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Landlord and Tenant*, Landlord's liability to tenant or his family or his
invitee, Portion of premises in control of landlord, Sprinkler system,
Repairs. *Negligence*, Violation of law, Repairs, One owning or con-
trolling real estate, Sprinkler system. *Practice, Civil*, Exceptions:
whether error harmful. *Error*, Whether harmful. *Evidence*, Opinion:
expert.

A landlord of a building let without any agreement as to repairs and
containing a sprinkler system which remained in his control, in the
absence of any evidence as to the condition or apparent condition of
the sprinkler system at the time of the letting, was not liable to the
tenant in tort at common law for damage to the tenant's goods in a
fire occurring several days after the landlord, without notifying either
the tenant or the fire department, had shut off the sprinkler system
in order to repair it and thereby had also prevented the giving of a
fire alarm over a wire connected with the sprinkler system.

A landlord is not liable to his tenant for ordinary negligence in making
repairs gratuitously.

A violation by a landlord of the provisions of G. L. c. 148, § 27A, in-
serted by St. 1932, c. 283, forbidding the temporary shutting off of a
sprinkler system without a report thereof to the head of the fire de-
partment within twenty-four hours, does not per se create a cause
of action by the tenant against the landlord for damage resulting
from the shutting off; nor is such violation of itself evidence of negli-
gence of the landlord toward the tenant, since the statute does not
impose on the landlord a duty to the tenant beyond any duty which
he may have at common law.

No error prejudicial to the plaintiff was shown by the admission of evi-
dence which, though inadmissible, was immaterial on the issue of the
defendant's liability; nor, where the plaintiff was not entitled to re-
cover, in the exclusion of evidence bearing only on the matter of
damages.

No error appeared in the exclusion of opinion testimony where it did
not appear that the judge found that the witness was qualified to ex-
press an opinion or what his answer would have been.

TORT. Writ in the Superior Court dated May 17, 1940.
The action was tried before *Warner, J.*

*H. F. Wood,* (*L. J. O'Malley* with him,) for the plaintiff.
*E. B. Hanify,* (*W. H. Daly* with him,) for the defendant.

Cox, J. The plaintiff, as a tenant of the defendant, occupied a two-story building from 1937 for the storage of personal property. In March, 1940, the plaintiff's personal property was damaged by fire and water as the result of a fire that occurred in the building, and this action is to recover for that damage. At the close of the plaintiff's evidence, the trial judge allowed the defendant's motion for a directed verdict, subject to the plaintiff's exception. The plaintiff also excepted to the admission and exclusion of evidence, hereinafter referred to.

At the beginning of the plaintiff's tenancy there was a sprinkler system in the building, which was controlled from an adjoining small building, described as the gate valve house. There is no contention that this house was a part of the rented premises. A fire alarm, wired from this house to the Methuen fire station, was designed to operate when water from the gate valve house flowed into the sprinklers in the storage building. Four days before the fire occurred, an employee of the defendant, while in this house, found that the sprinkler system had "tripped," which meant that there was a leak or split in the sprinkler pipes in the storage building which allowed air to go out of the pipes, with the result that, the air pressure having been released, water had gone into the sprinkler system. He found that two pipes in the storage building had split, whereupon he closed the valve in the gate valve house, drained the sprinkler system, reported the matter to the defendant and was instructed to fix the pipes immediately. On the following day he took out the split pipes and obtained pieces of pipe with which to replace them, and worked on the repairs the next day, which was Saturday. The fire occurred on the Monday following, before he had replaced the pipes.

It could have been found that plugs could have been inserted where each split pipe was removed, and that if this had been done the sprinkler system would have worked except where the two lengths of pipe had been removed. No plugs were inserted. With the valve in the gate valve

house closed, no water could go into the sprinkler system. The defendant admitted that no notice was given to the fire department that the system had been shut off, and the witness who made the repairs testified that he did not notify the plaintiff or any one connected with it that he had shut off the system. There was evidence that four hours would have been a liberal allowance of time in which to replace the split pipes. At the time of the fire, no alarm sounded at the fire station over the wire from the gate valve house, and there was evidence that, if the system had been in proper condition on that day, the alarm would have sounded. The fire department was notified by some one who came to the fire station. The fire chief was among the first to arrive at the building and saw the fire burning very near a loading platform door. There was no water coming from the sprinkler system, and the fire had started six to eight feet from the nearest sprinkler head. The opinion of the fire chief was that, if the system had been in operation, the fire would have been confined to the locality around its origin.

The evidence as to the nature of the plaintiff's tenancy came from its treasurer who testified that he had "nothing to do with the sprinkler system and neither . . . [he] nor his company had anything to do with the so-called sprinkler house"; that in 1937, when he conferred with a representative of the defendant relative to renting the storage building, the "plaintiff" agreed to hire the building by the year, and that "we couldn't hire this building for one week or ten days, we have an oral agreement with him [the defendant's representative] that that building is ours. Each year we have this building."

The first count of the declaration contains allegations as to the tenancy, the removal of the broken pipes by an employee of the defendant and the failure to notify the plaintiff or the fire department that the sprinkler system was shut off, and also allegations that "by reason of the negligence of the defendant in shutting off said sprinkler system, and in failing to notify the Methuen Fire Department that the sprinkler system was shut off, the fire was not extinguished in that part of the building where it started" but

spread beyond, thereby causing damage to the plaintiff. The second and third counts each allege that "it was the duty of the defendant to keep said sprinkler system in repair." The negligence alleged in the second count is the failure of the defendant to notify the plaintiff or the fire department that the sprinkler system was not in working condition, and in the third count, the failure to notify the plaintiff or the fire department that the sprinkler system was not in working condition, and in addition, "the failure of the automatic alarm to sound" in the fire station. The concluding allegation is that all three counts are for the same cause of action.

The plaintiff's cause of action is based upon negligence. The only evidence as to the nature of the tenancy and what was comprised within it has been recited. There is not even a suggestion in the bill of exceptions that the control of the sprinkler system did not remain in the defendant. The plaintiff contends in this court that "the relation of landlord and tenant between the parties created certain rights for the benefit of the plaintiff and imposed certain duties and obligations on the defendant. The defendant, as landlord, had exclusive access to and control of the gate valve house, . . . made repairs and otherwise had exclusive control and supervision of the sprinkler system." We think it is apparent that one theory upon which the case was tried was that of negligence arising out of the failure of the defendant, as landlord, to repair or keep in repair a part of the rented premises over which it retained control. There is nothing in the bill of exceptions to warrant the conclusion that the defendant was under any obligation to keep the sprinkler system in repair, or that there was any agreement, either express or implied, by which the landlord was bound to keep it in repair, apart from the duty arising from its control of the system.

Apart from the matter to be considered hereinafter, the plaintiff must recover, if at all, on the familiar principle that, in the absence, as here, of express agreement, a landlord owes a duty — breach of which would constitute negligence — to a tenant, and to persons using the premises in

his right, to exercise reasonable care to keep the part of the premises remaining in the control of the landlord in the condition with respect to safety in which they were, or to a person of ordinary observation would appear to be, at the time of the letting. The plaintiff, therefore, in order to recover on this aspect of the case, had the burden of proving that, at the time its tenancy began, the condition that caused its damage did not or did not appear to exist. Without evidence of the condition or appearance of the sprinkler system at that time, there is nothing upon which to base a possible breach of the defendant's duty. *Shwartz* v. *Feinberg*, 306 Mass. 331, 333, 334, and cases cited. A similar obligation has been recognized with respect to appliances on the rented premises, where the appliances remain in the landlord's exclusive control. *Beauvais* v. *Springfield Institution for Savings*, 303 Mass. 136, 140, 141, and cases cited. There is nothing to show when in 1937 the plaintiff first became a tenant. The only finding warranted upon the evidence is that the tenancy was oral, and an oral letting creates a tenancy at will. G. L. (Ter. Ed.) c. 183, § 3. If, as the plaintiff contends, the tenancy, although oral, was from year to year, it would end without notice to quit at the end of the term. *Adjmi* v. *Ginter Restaurant Co.* 291 Mass. 224, 225–226. Not only does it not appear when the last tenancy of the plaintiff came into existence, but there is nothing to show what the condition of the sprinkler system was at that time, whenever it was. Accordingly, there is nothing upon which to base a possible breach of the defendant's common law duty.

It is not contended by the defendant that it did not undertake to make repairs in the sprinkler system, but in the absence of any evidence from which it could be found that it was under any legal obligation to make these repairs, the doing of them would amount to nothing more than a gratuitous undertaking on the part of the defendant, for which it would not be liable unless it was grossly negligent. *Bergeron* v. *Forest*, 233 Mass. 392, 398. *Cleary* v. *Union Realty Co.* 300 Mass. 312, 313. *Diamond* v. *Simcovitz*, 310 Mass. 150, 152. There is no contention that the defendant was

grossly negligent. In fact, the plaintiff's declaration and its contention are that the gist of its action is that the defendant was "negligent."

What has been said is applicable to the plaintiff's allegation that the defendant failed to notify the plaintiff that the sprinkler system was not in working condition. If it be assumed, without deciding, that a landlord in control of appliances in rented premises is required to give notice to the tenant as to the condition of these appliances as a part of his duty to keep them in repair under the familiar rule, it is not contended that its failure so to do in the case at bar amounted to gross negligence.

The case at bar is distinguishable from *Priest* v. *Nichols,* 116 Mass. 401 (see *McKeon* v. *Cutter,* 156 Mass. 296, 297), *Devine* v. *Lyman,* 270 Mass. 246, 248, 249, *Rosen* v. *Burnham,* 272 Mass. 583, *Moss* v. *Grove Hall Savings Bank,* 290 Mass. 520, *Rudomen* v. *Green,* 299 Mass. 485, *Beauvais* v. *Springfield Institution for Savings,* 303 Mass. 136, and *Burke* v. *Zatoonian,* 309 Mass. 541.

The plaintiff contends that the defendant could have been found to be negligent by reason of the alleged violation of G. L. c. 148, § 27A, inserted by St. 1932, c. 283, which provides, so far as material, that the owner of a building shall not shut off or disconnect any sprinkler system or other device used for fire protection in his building without first procuring a written permit so to do from the head of the fire department of the town wherein the building is situated, except that a temporary shutting off or disconnection, or partial removal of such a system or other device may be made for the purpose of making necessary repairs, provided that a report thereof is made within twenty-four hours thereafter to the head of the fire department.

It is a familiar principle that violation of a statute, although not conclusive, is evidence of negligence on the part of the violator as to all consequences that the statute was intended to prevent. *Baggs* v. *Hirschfield,* 293 Mass. 1, 2–3. *Follansbee* v. *Ohse,* 293 Mass. 48, 52. Said § 27A imposes a duty upon the owner, lessee, occupant, or upon one in control of, or one who has supervision of, a building, the

violation of which is made punishable by fine or imprisonment, or both.   It was admitted that the defendant did not, as required by this section, make a report within twenty-four hours to the head of the fire department that the sprinkler system had been shut off, and it could have been found that, as a result of shutting off the system, the device for conveying an alarm to the fire station was disconnected. There was evidence that if the system had been in proper condition, the alarm would have sounded at the fire station.

Section 26 of said c. 148 provides, among other things, that any building used for certain purposes shall, upon order of the fire marshal, be equipped with automatic sprinklers, and it is the contention of the plaintiff that it was not the intention of the Legislature in enacting said § 27A, in so far as it relates to "any sprinkler system," to limit such system to the automatic sprinklers that may be required by order of the fire marshal under said § 26.   See as to this last section, *Commonwealth* v. *Badger*, 243 Mass. 137, 140, and *Little* v. *Lynn & Marblehead Real Estate Co.* 301 Mass. 156, 161.   It is unnecessary to decide the question raised by this contention.   We assume, without deciding, that the reference to "any sprinkler system" in said § 27A relates to any such system, whether installed by order of the fire marshal or not.

Section 27A does not, either by its express terms or by reasonable implication, purport to impose a civil liability or to affect the mutual relations and duties of landlords and tenants as between each other.   In the case at bar we are concerned only with that part of the section that relates to the giving of notice where there had been a temporary shutting off of the sprinkler system for the purpose of making necessary repairs.   There is no contention that repairs were not required in the system.   As was said in *Richmond* v. *Warren Institution for Savings*, 307 Mass. 483, 485: "There is in this Commonwealth no doctrine of 'negligence *per se*,' whereby a penal statute designed to secure safety is held to create to the extent to which it applies a new standard of care other than and different from due care under the circumstances, so that violation of it is regarded

as in itself necessarily a negligent act upon which a liability as for negligence can be predicated. Such a statute creates a new civil cause of action only when that appears by express terms or by clear implication to have been the legislative intent." See cases cited and *Barboza* v. *Decas*, 311 Mass. 10, 12. Moreover, it was said in the *Richmond* case, at pages 485 and 486: "Violation of the statute [G. L. (Ter. Ed.) c. 143, relative to inspection and regulation of, and licenses for, buildings, elevators and cinematographs] had no effect as evidence of negligence. There can be negligence only with relation to a duty to exercise care, and as the statute creates no new duty of care as between landlord and tenant the duty of care, if any, in this case must be that existing at common law. . . . [The landlord's] duty relates to the condition of the premises [a common stairway] themselves as compared to their condition when the tenancy began."

Although the first count of the plaintiff's declaration does not allege in terms that it is based upon a violation of said § 27A, the only negligence that is alleged is that the defendant shut off the sprinkler system and failed to notify the fire department that it had done so. The shutting off of the sprinkler system was for the purpose of making necessary repairs. This follows from the allegations contained in the first count of the declaration. We think that the import of the first count is to allege a violation of said § 27A. It must be taken that the trial judge, in directing a verdict for the defendant, acted with the declaration before him and in view of its averments. *Aldworth* v. *F. W. Woolworth Co.* 295 Mass. 344, 345, and cases cited. As already appears, the second and third counts of the declaration allege that it was the duty of the defendant to keep the sprinkler system in repair, and the contentions of the plaintiff in this respect have been stated heretofore. We are of opinion, for reasons already stated, that the common law duty of the defendant was not enlarged by the provisions of said § 27A, and that there was no error in directing a verdict for the defendant in so far as any of the counts of the declaration are concerned.

The plaintiff excepted to the admission of the testimony of the fire chief that his report, required by § 2 of said c. 148, gave careless smoking as the cause of the fire. This evidence was inadmissible, *Cawley* v. *Northern Waste Co.* 239 Mass. 540, 545; see *Jewett* v. *Boston Elevated Railway,* 219 Mass. 528, but was immaterial on the question of the defendant's liability and its admission did not constitute reversible error. G. L. (Ter. Ed.) c. 231, § 132. The plaintiff also excepted to the exclusion of testimony offered through a fire insurance adjuster who saw the building a day or two after the fire. He was asked to give his opinion whether the fire would have been confined to a small area if the sprinkler system had been operating properly. The question might well have been excluded on the ground that the witness was not qualified to express an opinion. Moreover, it does not appear what the answer to the question would have been. The other excluded question was whether this witness found an "extra hazard there." The plaintiff offered to show by the witness that the fire hazard was increased by the failure of the sprinkler system to operate and thereby increased the plaintiff's damages. If we assume that the proffered answer to the question was responsive, nevertheless, it related to the question of damages, and in view of our conclusions, the plaintiff was not harmed by the exclusion of the question.

*Exceptions overruled.*