ELSIE F. STAPLETON *vs.* HARRY A. COHEN, executor.

Suffolk.    May 1, 1967. — June 29, 1967.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Landlord and Tenant,* Common hallway, Lights, Landlord's liability to tenant or one having his rights. *Negligence,* One owning or controlling real estate, Violation of law. *Building Laws.*

The landlord of an apartment building was not liable for injuries sustained by a tenant's employee in a fall in a common hallway in the early afternoon allegedly due to want of sufficient light in the hallway where it was not shown that the landlord had ever assumed a duty to provide light in the hallway at that time of day; a failure by the landlord to comply with certain provisions of the municipal building code and a sanitary code of the State Department of Public Health respecting lighting of such hallways did not affect the legal relations between him and the tenant or the employee or constitute evidence of negligence on the landlord's part toward the employee.

TORT.    Writ in the Superior Court dated October 23, 1961.

The action was tried before *Goldberg, J.*

*Joseph J. Walsh* for the defendant.

*Constance Coulopoulos* for the plaintiff.

KIRK, J.    The sole question presented by the bill of exceptions in this action of tort for negligence is whether, viewing the evidence in light most favorable to the plaintiff

(*Mazzaferro* v. *Dupuis,* 321 Mass. 718, 719), the judge was in error in denying the defendant's motion for a directed verdict.

The plaintiff had been employed as a domestic since August, 1960, by the Hurwitz family, who occupied a suite as tenants at will in an apartment building owned and maintained by the defendant's testator at 85 Winchester Street, Brookline. On April 4, 1961, the plaintiff suffered injuries when she fell in a common hallway on the second floor which gave access to and egress from a back porch used in common by the Hurwitz family and another tenant. The back porch was fifteen feet long and seven feet wide. The overall dimensions of the hallway were approximately thirteen feet by eight feet. A screen door and the house door separated the porch from the hallway. The upper part of the house door was of glass panels. On one side of the hallway there was a mat in front of a recessed door leading to the Hurwitz' kitchen.

The plaintiff's fall took place between 2:30 and 3 p.m. as she was returning to the Hurwitz kitchen after removing some small items from a clothesline on the back porch. The plaintiff closed the porch doors and walked toward the kitchen door, as she had done many times before. Instead of stepping onto the mat, which she knew was there, her foot hit the edge of the mat, causing her to be thrown into the kitchen through the kitchen door which she had left partly open.

At the time of the accident, it was daylight outside; it was dark when the plaintiff came into the hallway; "naturally, the hall was darker than it was outside." There was an electric light fixture in the hallway ceiling outside the door to the Hurwitz kitchen. It was agreed that all the back hallway lights were controlled by a switch in the basement which was operated by the building superintendent by means of a key, and that in April the lights were turned on at some time between 4:30 and 5 p.m. and turned off at sometime between 6:30 and 7 a.m. It was also agreed that the back hallway lights were not on when the plaintiff fell.

A provision of the Building Code of Brookline in effect at the time of the accident and applicable to multiple dwellings such as the apartment building involved in this case read: "Lighting of Public Halls and Stair Shafts. Interior halls and stairs in buildings in Group B occupancy shall be so lighted naturally or artificially that illumination of at least one lumen per square foot (one foot candle) will at all times be obtained in every portion thereof." Article II, subsection 7.5, of the Sanitary Code of the State Department of Public Health, filed with the Secretary of the Commonwealth, reads: "The owner shall at all times provide light in every part of all interior passageways, hallways, and stairways used or intended for use by the occupants of more than one dwelling unit or rooming unit so that the illumination, alone or in conjunction with natural lighting, shall be at least 2 lumens per square foot (2 foot candles)." Light meter tests made at the request of the plaintiff in 1966 under natural lighting conditions purportedly similar to those which existed on April 4, 1961, tended to show that at no point in the hallway did the meter reading reach two lumens per square foot. Other tests taken "waist high" near the door window showed six out of seven readings to be more than one lumen, and two were more than two lumens.

The plaintiff stakes her right to recover on the theory that the landlord, having a duty to light the hallway adequately, negligently failed to perform the duty and thereby caused injury to the plaintiff.

The landlord owed to the plaintiff, an employee of the tenant, the same legal duty which he owed to the tenant, i.e., the duty to use reasonable care to keep the hallway, a common area, in the same condition it was or appeared to be in at the time of the creation of the tenancy. *Goode* v. *Esterman,* 342 Mass. 527, 528. *Campbell* v. *Romanos,* 346 Mass. 361, 364–365, and cases cited. "In the absence of contractual or statutory obligation, it is settled that a landlord is not bound to light a common stairway." *Fenno* v. *Roberts,* 327 Mass. 305, 307, and cases cited. There is no

evidence that the landlord expressly or impliedly had assumed the obligation to provide artificial light at or about the hour of day of the plaintiff's fall.  See *Denny* v. *Burbeck,* 333 Mass. 310, 312.   Cf. *Donnelly* v. *Larkin,* 327 Mass. 287.

As a basis for imposing liability the plaintiff appears to rely exclusively upon the landlord's alleged failure to comply with the provisions of the Building Code of the town and the Sanitary Code of the State Department of Public Health quoted earlier in this opinion.   This court has previously considered the effect of similar codes, regulations and statutory provisions.   Regulatory measures in penal statutes affecting various types of buildings do not, except where the legislative intent appears in express terms or by clear implication, "impose a civil liability or . . . affect the mutual relations and duties of landlords and tenants as between each other. . . .  Violation of the statute had no effect as evidence of negligence."   Qua, J., in *Richmond* v. *Warren Inst. for Sav.* 307 Mass. 483, 485.   *Greenway Wood Heel Co. Inc.* v. *John Shea Co.* 313 Mass. 177.   We have held that the same principle applies to municipal regulations.   *Campbell* v. *Romanos,* 346 Mass. 361, 368.   It applies also to the provision of the code promulgated by the State Department of Public Health which was in evidence.

The defendant's motion for a directed verdict should have been allowed.

*Exceptions sustained.*
*Judgment for the defendant.*