JUDITH ROBERTS vs. REBECCA SOUTHWICK.

Franklin. February 4, 1993. - June 9, 1993.

Present: LIACOS. C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Evidence*, Regulations, Expert opinion. *Error*, Harmless. *Occupational Safety and Health Administration. Negligence*, Construction work, Proximate cause. *Proximate Cause. Jury and Jurors. Judge. Practice, Civil*, Instructions to jury.

On appeal in a negligence action against the general contractor on a construction site in which the plaintiff contended that the judge had erred in excluding from evidence certain Occupational Safety and Health Administration (OSHA) regulations, this court declined to grant a new trial based wholly or partly on the ground that the judge failed to admit the OSHA regulations where, in its view, the plaintiff had failed to offer in appropriate form the OSHA regulations she now argues the judge erroneously excluded. [467-469] O'CONNOR, J., with whom LYNCH, J., joined, concurring. NOLAN, J., with whom LIACOS, C.J., and ABRAMS, J., joined, dissenting.

At the trial of a negligence claim against the general contractor at a construction site at which the plaintiff was injured by falling sheetrock, any error in the judge's refusal to allow an expert called by the plaintiff to testify about the force that would have been needed to topple properly-stacked sheetrock of the size and amount that fell on the plaintiff was harmless, where, although the defendant admitted that the sheetrock was precariously stacked and that it fell on the plaintiff and injured her, the plaintiff failed to prove that, in continuous sequence, unbroken by a new cause, the defendant's negligence produced the plaintiff's injuries. [469-474] NOLAN, J., with whom LIACOS, C.J., and ABRAMS, J., joined, dissenting.

There was no merit to the contention by the plaintiff in a negligence case that the judge's actions at trial constituted judicial misconduct in violation of her constitutional right to an impartial magistrate. [474]

CIVIL ACTION commenced in the Superior Court Department on December 29, 1987.

The case was tried before *John F. Murphy, Jr.*, J., and a motion for a new trial was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Anne V. Romano* for the plaintiff.

*Carol Booth* (*Susan S. Woglom* with her) for the defendant.

O'CONNOR, J. The plaintiff's amended complaint asserts claims against Rebecca Southwick and Aetna Casualty and Surety Co. This appeal raises issues only between the plaintiff and Southwick (defendant). The complaint alleges that on January 28, 1985, the defendant was the general contractor at the site of a house construction project in the town of Leverett. It is alleged that on that day the plaintiff was present at the site as the defendant's invitee "for the purpose of learning carpentry skills with the consent of the [d]efendant" and not as an employee of the defendant. The complaint says that, as a result of the defendant's negligence, the plaintiff was injured by falling sheetrock. The case was tried to a jury, and the jury, responding to special questions, found that the defendant had been negligent, but that the defendant's negligence had not been the proximate cause of the plaintiff's injuries. The plaintiff moved for a new trial and her motion was denied. Judgment was then entered for the defendant and the plaintiff appealed. We granted the plaintiff's application for direct appellate review. We now affirm the judgment.

There was evidence at the trial that the defendant ran a program at the work site that was designed to teach carpentry skills to women for an enrollment fee. Before the incident giving rise to this case occurred, the plaintiff had worked mostly in sales and marketing but she had been laid off and was unemployed when she learned about the defendant's program. During the approximately one and one-half weeks before the incident, the plaintiff had attended the workshop for "a couple of half days." When asked what she did on those occasions, the plaintiff testified that the first couple of times she was at the site she "watched, because [she] really didn't have the skills and abilities to participate," but she

remembered carrying lumber, stacking it, and handing it to carpenters, and she remembered measuring lumber for some carpenters. On the day of the plaintiff's accident, according to her testimony, the plaintiff "was actually involved in hammering nails to put up the outside siding of one of the houses that was being built." Upon discovering that her nails "were not going into anything," the plaintiff "went inside of the house to see if there was an interruption in the framing that would make it so that there wouldn't be anything for [her] to be nailing into." While engaged in that endeavor, a stack of sheetrock fell on the plaintiff, injuring her.

The following relevant admissions of the defendant were read to the jury. The defendant admitted that the plaintiff "was not paid for time or work done at the construction site," but she was an invitee to whom the defendant owed a duty of reasonable care. The defendant also admitted that "the sheetrock stored on the job site which fell on [the plaintiff] was precariously balanced prior to the fall" and the falling sheetrock injured the plaintiff.

On appeal, the plaintiff argues that the judge erred in excluding from evidence certain Occupational Safety and Health Administration (OSHA) regulations, namely, 29 C.F.R. § 1926.16, entitled "Rules of construction," § 1926.20, entitled "General safety and health provisions," § 1926.21, entitled "Safety training and education," and § 1926.250, entitled "General requirements for storage." The plaintiff also contends on appeal that the judge erred in excluding expert testimony about the stability of properly stacked sheetrock and the force required to pull properly stacked sheetrock down. Lastly, the plaintiff argues that the judge's actions during the trial constituted judicial misconduct in violation of the plaintiff's constitutional right to an impartial magistrate. The plaintiff says that, because of these errors, she is entitled to a new trial. We do not agree.

After a careful review of the record, we are satisfied that the plaintiff failed to offer in appropriate form the OSHA regulations that she now argues the judge erroneously ex-

cluded.[1] Although the defendant has not argued that point, we are unwilling to grant a new trial based wholly or partly on the ground that the judge failed to admit evidence that, in our view, was never properly offered.

The plaintiff's counsel called the defendant to the witness stand and asked her whether she understood the OSHA regulations for safety on job sites. Defense counsel objected, and the plaintiff's counsel told the judge that he wanted to ask about the OSHA regulations pertaining to general safety. The judge observed that the OSHA regulations "go on for page after page," and requested counsel to be more specific. The plaintiff's counsel began a discussion of "[f]ive particular points," the first point being that general contractors are not relieved from compliance with respect to work performed under the contract. The judge asked whether the regulations apply "to a contractor of this type" and the plaintiff's counsel answered, "I believe they apply to anything that comes under FHA." Then the following colloquy occurred:

THE JUDGE: "Well, you've got to prove it."

PLAINTIFF'S COUNSEL: "[The defendant] said she didn't know if they were federal or state regulations. I could actually leave this out. I can get it in later through my expert."

THE JUDGE: "Okay."

Earlier in the trial, the plaintiff's counsel had conducted a voir dire examination of Robert Reckman, whom the plaintiff planned to present as an expert witness. In the words of the judge, the voir dire was to "find out what [the witness was] going to talk about." The voir dire examination of Reckman was interrupted by the testimony of other witnesses including the testimony of the defendant mentioned above. Then the voir dire examination of Reckman resumed. Reckman testified that there are OSHA regulations regarding the stacking of materials so they will not fall and injure workers, and that

---

[1] In her motion for a new trial, the plaintiff focused only on the judge's alleged exclusion of the OSHA regulation which deals with the proper stacking of materials, § 1926.250. The motion was silent with respect to §§ 1926.20 and 1926.21, regarding a general contractor's responsibilities with respect to safety training and accident prevention.

OSHA regulations require the contractor to be responsible for safety on the job site. In response to plaintiff's counsel's question as to which particular regulation the witness was referring to, the witness responded that it was perhaps in volume 29 of the Code of Federal Regulations, part 1926R, and he purported to quote from that regulation. There is no such part or § 1926R, but the quoted material appears to be the last sentence of § 1926.16 (a), which states, "In no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract." The judge stated, "I'm not going to let him get into the OSHA regulations based on the evidence I have in front of me." No specific OSHA regulations were offered by the plaintiff at that, or any other, time. The judge did not "exclude," and therefore did not erroneously exclude, the particular regulations the plaintiff now argues she was entitled to have admitted in evidence.

In addition to her contention that the judge erred in excluding certain OSHA regulations from evidence, the plaintiff says that the judge erred in refusing to allow an expert called by the plaintiff to testify about the force that would have been needed to topple properly-stacked sheetrock of the size and amount that fell on the plaintiff. Any error with respect to the exclusion of the expert's testimony was clearly harmless. The defendant admitted that the sheetrock was precariously stacked and that it fell on the plaintiff and injured her. The jury also found that the defendant was negligent. It was abundantly clear that, if the sheetrock had been stacked properly, it would not have fallen on the plaintiff. The single live issue at trial was whether the plaintiff had pivoted or pulled the precariously stacked sheetrock thereby breaking the chain of causation involving the defendant's conduct and proximately causing her own injuries. After the plaintiff testified on direct examination that she had discovered that her nails "were not going into anything," and that she went into the house to find out why that was so, she testified, "I came into the house, and I located the area where I

thought I had been working on the outside. I located the area where I thought my nails should be coming through into the inside. And at that place where I wanted to look on the inside and see if my nails were coming through, there was what I now know to be a pile of sheetrock leaning against the wall there, on the inside wall of the house. So I couldn't really see if that was the right place where my nails were coming through or not, because there was stuff stacked up against the wall there. . . . I leaned up against the pile of sheetrock. I was looking to see where my nail was coming through. . . . So I leaned up against the pile of sheetrock and tried to peer over it because I had the feeling that my nail was right behind it, and I wanted to see, you know, why it had come through there, why there wasn't something there for it to go into. . . . When I leaned up against the pile of sheetrock and tried to peer over it — it happened really fast then, that the pile basically fell over on top of me and caused me to fall back onto the pipes, onto the floor where the pipes were laying. And the sheetrock fell over on top of me."

On cross-examination, the plaintiff was asked, "Isn't it true that you tried to move that sheetrock to look behind, to find your nail?" The plaintiff answered, "Well, I'm not sure. I think that — I need that piece of paper again." The record shows that a "pad" was "returned" to the plaintiff by her counsel, and the cross-examination resumed. After testifying that she was unaware that the stack of sheetrock was hazardous, the plaintiff stated, "So what I'm saying is I leaned over it, and in leaning over it and trying to look behind it, may have tried like to pull on it. Do you know what I'm saying? Hey, it happened really fast that it fell over on me."

The defendant testified that, on the day of the accident or the next day, she had a telephone conversation with the plaintiff concerning how the accident happened. According to the defendant, the plaintiff "said that she had been instructed . . . to go inside the house looking for this nail that was sticking out, and went up to the pile of sheetrock and wanted to look behind the sheetrock, thinking the nail was behind it. And when she couldn't see the nail, she tried to

pivot the sheetrock so that she could see the nail, and then she couldn't remember what happened."

In her closing argument to the jury, defense counsel said, "I'd like to take a few minutes to go over the evidence with you. I think that the case was actually made more simple for you very early on in the presentation of the evidence when I asked Ms. Roberts, when she was on the stand, whether she tried to move that sheetrock. And she said she wasn't sure, but maybe she did try to pull it. She was tentative on the stand. She wasn't sure. But she had no hesitations the day of the accident or the day after the accident when she told Rebecca Southwick: 'What happened?' 'I tried to pivot the sheetrock.' That's what she said. And I suggest that that should make your review of the evidence relatively simple." Defense counsel also argued that, although the defendant, "as the general contractor . . . was responsible for a lot of things, it is impossible for any one person to know, to anticipate everything that someone else might do under a given set of circumstances." Counsel continued, "[A]nd I believe that to claim that [the defendant] had an obligation to know, or to anticipate that when [the plaintiff] was asked to go in and look for a nail, that she would try to pivot a pile of sheetrock is going too far. There's no such obligation or duty that can possibly be laid on any of us."

Plaintiff's counsel argued to the jury that the defendant had admitted that the plaintiff was an invitee on the defendant's premises, that the defendant owed the plaintiff a duty of reasonable care, including a duty to warn her of hazardous conditions, and that the sheetrock was "precariously balanced prior to the fall." Counsel also argued, "Now the defendant would say: 'Well, [the plaintiff] was foolish and silly for going in there and trying to look over that sheetrock. As far as the issue of whether she tried to pivot it or not, let me just say that the testimony was that [the defendant] called [the plaintiff] at the hospital the night of the accident or the next morning. I'd ask you to look at the medical records of the hospital. You'll find that at that time [the plaintiff] was in great pain, was nauseous, was on Demarol, codeine and

two other types of pain killers. If you remember the testimony of her husband-to-be . . . she was doped up and out of it. I would submit that to call her up, presumably to offer sympathy while she's lying in the hospital in great pain that night, and then six years and two months later to come back and quote something that she supposedly said, as an admission, is unfair. It's unfair."

Counsel for the plaintiff also argued to the jury that the only way the plaintiff could have known that the sheetrock was precariously stacked would have been "if she had been told that by [the defendant]." Counsel said, "I would say the failure to give that warning to Judith is what caused this accident. That was the proximate cause of this accident." In concluding his argument, counsel said, "And there are a couple of things I'd like you to bear in mind . . . [the plaintiff] was a total novice in construction. She had absolutely no skills whatsoever when she came onto that job site. She was given no warnings of any kind about anything on the job site, including the sheetrock. She was given no safety instructions, either written or oral. And she had never seen sheetrock before and didn't know what it was. Keep all of those factors in mind before you turn to her and say: 'We blame you for what you did in going up there and jostling or touching or pivoting or doing whatever she did with that sheetrock so that it fell on her.' "

The jury recognized the critical nature of the proximate causation question. During their deliberations they asked the judge to "[p]lease define proximate cause as it relates to question number 2." Question number 1 was whether the defendant was negligent. Question number 2 was "[I]f the answer to question number 1 is 'yes,' was such negligence of the defendant . . . a proximate cause of the personal injury sustained by the plaintiff . . . ?" In answering the jury's request for a definition of proximate cause, the judge repeated much of what he had told the jury in his main instructions. He told them, "the plaintiff [must] satisfy you, by a fair preponderance of the evidence, that the injuries she received were the direct result of the defendant's breach of duty to

her. To put it another way, the breach of duty by the defendant, if you find such breach to have occurred, must be demonstrated to you, by a fair preponderance of the evidence, to be the direct and proximate cause of the injuries to the plaintiff. A proximate cause is that which, in continuous sequence, unbroken by a new cause, produces an event, and without which the event would not have occurred. It may be assisted or accelerated by other incidental and ancillary matters. But if it is the continuous and operative and potent factor, then the chain of causation is not broken." Both counsel expressed their satisfaction with that instruction, and it was correct. As the court stated at greater length in *Horan* v. *Watertown*, 217 Mass. 185, 186 (1914), "[W]here . . . the original negligence of the defendant is followed by the independent act of third persons [or of a plaintiff] which directly results in injurious consequences to the plaintiff, the defendant's earlier negligence may be found to be the direct and proximate cause of those injurious consequences, if according to human experience and in the natural and ordinary course of events the defendant ought to have seen that the intervening act was likely to happen. But if this is not the case, if the intervening act which was the immediate cause of the injury complained of was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, even though a high degree of caution would have shown him that it was possible, then he owed no duty to the plaintiff to anticipate such further acts, the chain of causation is broken and the original negligence cannot be said to have been the proximate cause of the final injury."

Juries are presumed to have followed a judge's instructions. *Commonwealth* v. *Foster*, 411 Mass. 762, 766 (1992). *O'Connor* v. *Raymark Indus., Inc.*, 401 Mass. 586, 590 (1988). It is apparent that, after hearing the evidence and arguments concerning whether the plaintiff pivoted or pulled the sheetrock, the jury were not satisfied by a fair preponderance of the evidence that the defendant's negligence was other than a condition or remote cause of the plaintiff's injuries. Stated in another way, it is apparent that the plaintiff

failed to prove that, "in continuous sequence, unbroken by a new cause," the defendant's negligence produced the plaintiff's injuries. The important point is that this case presented a controversy not so much about what the defendant did or did not do, but about the plaintiff's conduct, its foreseeability by the defendant, and its role in bringing about the plaintiff's injuries. The jury resolved that controversy in the defendant's favor, and it cannot rightly be said that the jury might have reached a different result if the plaintiff's expert had been permitted to testify about the force needed to topple properly stacked sheetrock, which the sheetrock in this case was not, of the size and amount which fell on the plaintiff. See *DeJesus* v. *Yogel*, 404 Mass. 44, 48-49 (1989).

Finally, we turn briefly to the plaintiff's contention that the judge's actions at trial constituted judicial misconduct in violation of her constitutional right to an impartial magistrate. We have reviewed the plaintiff's contentions and conclude that they are without merit. To a large degree, the plaintiff's judicial misconduct argument depends on the validity of the plaintiff's arguments which we have discussed above and rejected. In addition, among other contentions which we need not discuss, the plaintiff asserts that the judge repeatedly "badgered" the plaintiff's counsel during voir dire and at sidebar. Our review of the record does not support the plaintiff's contention. In any event, the burden of establishing prejudice is especially difficult when the alleged misconduct occurred, as it did here, outside the jury's presence. The plaintiff has not sustained that burden.

*Judgment affirmed.*

O'CONNOR, J. (concurring, with whom Lynch, J., joins). Even if the regulations at 29 C.F.R. §§ 1926.16, 1926.20, 1926.21, and 1926.250 (1991), had been offered in evidence,

their exclusion would not have been erroneous.[1] A statute,

---

[1] The relevant portion of § 1926.16 provides: "In no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract."

Section 1926.20, entitled "General safety and health provisions," is as follows:

"(a) *Contractor requirements.* (1) Section 107 of the Act requires that it shall be a condition of each contract which is entered into under legislation subject to Reorganization Plan Number 14 of 1950 (64 Stat. 1267), as defined in § 1926.12, and is for construction, alteration, and/or repair, including painting and decorating, that no contractor or subcontractor for any part of the contract work shall require *any laborer or mechanic employed* in the performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety.

"(b) *Accident prevention responsibilities.* (1) It shall be the responsibility of *the employer* to initiate and maintain such programs as may be necessary to comply with this part.

"(2) Such programs shall provide for frequent and regular inspections of the job sites, materials, and equipment to be made by competent persons designated by the *employers.*

"(3) The use of any machinery, tool, material, or equipment which is not in compliance with any applicable requirement of this part is prohibited. Such machine, tool, material, or equipment shall either be identified as unsafe by tagging or locking the controls to render them inoperable or shall be physically removed from its place of operation.

"(4) The *employer* shall permit only *those .employees* qualified by training or experience to operate equipment and machinery."

Section 1926.21, entitled "Safety training and education," provides:

"(a) *General requirements.* The Secretary shall, pursuant to section 107(f) of the Act, establish and supervise programs for the education and training *of employers and employees* in the recognition, avoidance and prevention of unsafe conditions in *employments* covered by the act.

"(b) *Employer responsibility.* (1) The *employer* should avail himself of the safety and health training programs the Secretary provides.

"(2) *The employer* shall instruct each *employee* in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury.

"(3) *Employees* required to handle or use poisons, caustics, and other harmful substances shall be instructed regarding the safe handling and use, and be made aware of the potential hazards, personal hygiene, and personal protective measures required.

"(4) In job site areas where harmful plants or animals are present, *employees* who may be exposed shall be instructed regarding the potential hazards, and how to avoid injury, and the first aid procedures to be used in the event of injury.

"(5) *Employees* required to handle or use flammable liquids, gases, or

ordinance, or regulation "is evidence of negligence on the part of a violator as to all consequences that the statute, ordinance or regulation was intended to prevent." *Perry* v. *Medeiros*, 369 Mass. 836, 841 (1976), quoting *Follansbee* v. *Ohse*, 293 Mass. 48, 52 (1935). The Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651 et seq., and the regulations promulgated thereunder, including those at issue in this case, were not designed to protect persons such as the plaintiff who, according to her uncontradicted pleadings and testimony, was not an employee of the defendant but, instead, was a mere intermittent observer at the work site. The language of OSHA and the OSHA regulations makes it clear that the regulations were designed to protect employees, not mere invitees. In § 651(a), entitled "Congressional statement of findings and declaration of purpose and policy," Congress states that "personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments." The statute imposes numerous duties on employers and employees to lessen that

---

toxic materials shall be instructed in the safe handling and use of these materials and be made aware of the specific requirements contained in subparts D, F, and other applicable subparts of this part.

"(6)(i) All *employees* required to enter into confined or enclosed spaces shall be instructed as to the nature of the hazards involved, the necessary precautions to be taken, and the use of protective and emergency equipment required. The *employer* shall comply with any specific regulations that apply to work in dangerous or potentially dangerous areas.

"(ii) For purposes of paragraph (b)(6)(i) of this section, 'confined or enclosed space' means any space having a limited means of egress, which is subject to the accumulation of toxic or flammable contaminants or has an oxygen deficient atmosphere. Confined or enclosed spaces include, but are not limited to, storage tanks, process vessels, bins, boilers, ventilation or exhaust ducts, sewers, underground utility vaults, tunnels, pipelines, and open top spaces more than 4 feet in depth such as pits, tubs, vaults, and vessels." (Emphasis added.)

The relevant part of § 1926.250, entitled "General requirements for storage," is "(a) *General.* (1) All materials stored in tiers shall be stacked, racked, blocked, interlocked, or otherwise secured to prevent sliding, falling or collapse."

burden. Section 654(b) provides that "[e]ach employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct." The plaintiff was neither bound by the OSHA regulations nor was she protected by them. See *Barrera v. E.I. DuPont De Nemours & Co.*, 653 F.2d 915, 920 (5th Cir. 1981) ("OSHA does not create duties between employers and invitees, only between employers and their employees"). Because the OSHA regulations were not designed to prevent injuries to nonemployee visitors, they would have been inadmissible even if they had been offered.

In my view, still another point with respect to the OSHA regulations should be made. Even if the regulations had been adequately offered, and even if they had been admissible, they would have been admissible on the question of negligence only, not causation. The jury found the defendant was negligent, so the exclusion of admissible evidence of negligence, even if that occurred, was harmless. New trials should not be awarded on the basis of harmless error.

This court has never held that safety statutes, ordinances, or regulations are admissible to prove causation. Negligence and causation are separate matters. See J.R. Nolan & L.J. Sartorio, Tort Law § 227, at 380 (2d ed. 1989). As the court has stated in *Perry* v. *Medeiros, supra* at 841, " '[t]he general rule in Massachusetts is that violation of [a] safety statute or ordinance does not in itself give rise to a cause of action but is *evidence of negligence.*' *Dolan* v. *Suffolk Franklin Sav. Bank*, 355 Mass. 665, 667 (1969). It is also the general rule that while the violation of a safety statute, ordinance or regulation is not conclusive on the issue of civil liability, it '. . . is *evidence of negligence* on the part of a violator as to all consequences that the statute, ordinance or regulation was designed to prevent.' *Follansbee* v. *Ohse*, 293 Mass. 48, 52 (1935), quoting from *Guinan* v. *Famous Players-Lasky Corp.*, 267 Mass. 501, 516 (1929)." (Emphasis added.) See also *Falvey* v. *Hamelburg*, 347 Mass. 430, 435 (1964) ("To say that the violation of law involved in operating an improp-

erly registered automobile is evidence of negligence does not necessarly mean that there is a case for the jury. There is still the question of causation to consider").

Evidence concerning violation of safety regulations is logically related to the question whether conduct has been reasonable, but it bears no such relationship to the question of causation. "Underlying [the rule that violation of a safety regulation may be evidence of negligence] is the general belief that the duties imposed by legislatively-prescribed conduct are normally reasonable ones to bear." *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 28 (1979). It cannot fairly be said, however, that, according to the common experience of mankind, the fact that a defendant's conduct preceding a plaintiff's injury violated a safety regulation tends to prove that the conduct caused the injury. Causation can only be determined by reference to the events that took place. Whether one or more of those events constituted a violation of law says nothing about causation. Thus, even if the OSHA regulations had been erroneously excluded by the trial judge, which was not the case, an award of a new trial would have been inappropriate.

NOLAN, J., (dissenting, with whom Liacos, C.J., and Abrams, J., join). The trial judge in this case excluded evidence which was not only relevant but crucial to the plaintiff's case. For this reason, the plaintiff is entitled to a new trial, and therefore I dissent.

The majority's opinion rests on an issue which is not before this court. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Whether the OSHA regulations were properly offered in evidence is an issue which was not raised, briefed, or argued by either party. Indeed, contrary to the court's holding, both parties assume in their briefs that Roberts sought to introduce regulations of the Occupational Safety and Health Administration (OSHA) and that the judge excluded them. The transcript reveals that Roberts's counsel twice approached the subject of OSHA regulations

and each time the judge prevented any further exploration.[1] As to which regulations Roberts sought to introduce, the transcript records that Roberts's counsel referred to the "general safety" regulations and stated that he planned to address "[f]ive particular points." He addressed only one point before the judge interrupted. The second time the judge repeated his decision "not . . . to let [the expert witness] get into the OSHA regulations based on the evidence . . . in front of me." The majority claims that by these words the judge did not "exclude" the regulations, *ante* at 469, yet it seems to me and apparently to both parties as well that to keep evidence from coming in is to "exclude" it. Moreover, the majority fails to consider that a judge's attitude and inflections, which are not reflected in the transcript, may on occasion communicate a ruling more effectively than words. In this case, the transcript, ambiguous at best, simply does not substantiate the decision to address an issue not raised by the parties. As a result, there is no firm ground to support the majority's opinion; it is built in the clouds.

The OSHA regulations are relevant to the issue of proximate cause, which as the court notes, *ante* at 469, was the crux of the case at trial. If a plaintiff's injuries are the foreseeable result of the defendant's breach of duty or a natural and probable consequence of the defendant's negligence, such negligence was the proximate or legal cause of the injuries. See *Rae* v. *Air-Speed, Inc.,* 386 Mass. 187, 193 (1982) (foreseeable cause); *Marshall* v. *Carter,* 301 Mass. 372, 377-378 (1938), quoting *Ogden* v. *Aspinwall,* 220 Mass. 100, 103 (1915) (probable consequence). See generally J.R. Nolan & L.J. Sartorio, Tort Law § 226, at 370-374 (2d ed. 1989). An

---

[1] It is also important to note that, during the voir dire of Roberts's expert witness, Roberts's counsel asked whether the "precarious" nature of the improperly-stacked sheetrock "would be readily apparent to the normal common sense person." Such a question squarely addresses the subject matter of 29 C.F.R. § 1926.21 (1991), the safety training and education regulation, which requires employers to train and to educate employees on how to recognize and to avoid workplace dangers. When Roberts's counsel asked if he could "make an offer of proof" on that point, the judge refused to allow it.

accurate standard of care, therefore, is crucial in determining what injuries could be the natural and probable consequence of a breach of that duty.

To establish the scope of the duty owed by the defendant, Roberts sought to introduce evidence that the defendant was in violation of safety and health regulations. The OSHA regulations outline, inter alia, the defendant's duty to train and to educate employees in the recognition and avoidance of all unsafe conditions at a work site, 29 C.F.R. § 1926.21 (b) (2), as well as to conduct frequent and regular inspections, § 1920.21 (b) (2), and store materials properly, § 1926.250 (a) (1). These affirmative statutory duties go well beyond the obligations owed to invitees at common law. See *Mounsey* v. *Ellard*, 363 Mass. 693, 707 (1973) (common duty of reasonable care). Cf. *Comeau* v. *Brown-Wales Co.*, 348 Mass. 800 (1965) (defendant not negligent because no duty to store materials properly and no duty to warn of "self-evident" danger in storage area). Although the regulations refer only to "employees," the duty owed to an employee is relevant to the scope of the duty owed to a trainee like Roberts who performs similar tasks and hence is subject to the same risks as employees.[2] Thus, the regulations significantly enlarge and clarify the scope of Southwick's obligation to Roberts.

Roberts also attempted to introduce expert testimony concerning the force needed to topple properly-stacked sheetrock of the size and amount which fell on her. The judge refused to allow this testimony because he believed that such evi-

---

[2]The record indicates that the workshop offered supervised, hands-on, on-site training, and that on the day of her injury Roberts was assisting a supervisor in nailing clapboards to the outside of a house. It was the supervisor who asked Roberts to go inside the house and look for the nail marks in the same room as the pile of sheetrock. Therefore, when Roberts was injured, she was performing the task of an employee under an employee's supervision. Since her injuries were work related, they were of a kind which the regulation was designed to prevent.

Obviously, Southwick's duties as prescribed by the OSHA regulations would not apply to trespassers, visitors, or others who were not relying on the contractor's supervision and performing the same tasks as her employees.

dence was not expert testimony but mere common knowledge. Common knowledge, however, is not the standard for excluding expert testimony in Massachusetts. A trial judge must determine whether the expert's testimony would be of *assistance* to the jury in resolving a factual issue. *Commonwealth* v. *Francis*, 390 Mass. 89, 98-99 (1983), and cases cited. Accord Proposed Mass. R. Evid. 702. We have noted that "the line between matters of common knowledge and matters beyond common knowledge often is not precise." *Commonwealth* v. *Trainor*, 374 Mass. 797, 801-802 (1978). As a result, a judge's attention is more properly focused on what assistance, if any, the expert's testimony could provide to the jury. *Id.* at 802. If the testimony would not aid the jury because it was clearly within common knowledge, then it may be properly excluded. E.g., *Thomas* v. *Tom's Food World, Inc.*, 352 Mass. 449, 451 (1967) (expert testimony not needed to show that greasy ramp at forty or forty-five degree angle was dangerous). The handling of sheetrock is not a matter clearly within common knowledge.

The exclusion of the OSHA regulations and the expert's testimony was not harmless error. If either had been introduced as evidence, the jury might have reached a different result. They might have concluded, for example, that absent the proper warnings or training, it was foreseeable that an inexperienced trainee might attempt to move a pile of improperly-stacked sheetrock. If so, then Roberts's negligence would not be an intervening act and would not break the chain of causation proceeding from the defendant's breach of duty. See *Horan* v. *Watertown*, 217 Mass. 185, 186 (1914); J.R. Nolan & L.J. Sartorio, Tort Law § 228, at 381-382 (2d ed. 1989). Southwick's negligence, therefore, would be the "operative factor" or proximate cause of Roberts's injuries.

For these reasons, Roberts is entitled to a new trial. See *DeJesus* v. *Yogel*, 404 Mass. 44, 49-50 (1989).